STATE of Wisconsin,† Plaintiff-Appellant,

v.

Norbert W. MAUTHE,† individually and d/b/a N.W. Mauthe Company, Wisconsin Chromium Corporation and United States Fidelity & Guaranty Co., Defendants-Respondents. [Case No. 86–2199.]


STATE of Wisconsin,† Plaintiff,

v.

Carol MAUTHE,† Personal Representative of the Estate of Norbert W. Mauthe, d/b/a N.W. Mauthe Company, Defendant-Appellant,

WISCONSIN CHROMIUM CORPORATION, Defendant,

UNITED STATES FIDELITY & GUARANTY CO., Defendant-Respondent. [Case No. 87–0542.]

Court of Appeals

*Nos. 86–2199, 87–0542. Submitted on briefs October 6, 1987.— Decided December 16, 1987.*

(Also reported in 419 N.W.2d 279.)

† Petitions (2) to review denied.

For plaintiff-appellant, State of Wisconsin, there were briefs by *Donald J. Hanaway,* attorney general, and *Shari Eggleson,* assistant attorney general, of *Wisconsin Department of Justice,* of Madison.

For defendant-appellant, Carol Mauthe, there was a brief by *Nila Jean Robinson* of *Robinson, Robinson, Peterson, Rudolph & Cross,* of Appleton.

For defendant-respondent, United States Fidelity & Guaranty Co., there was a brief by *William J. Corrigan* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. This is an appeal from a summary judgment granted to the United States Fidelity and Guaranty Company based on the trial court's conclusion that coverage was excluded under the insurance policy issued to Norbert Mauthe by a pollution exclusion clause. The appellants, the State of Wisconsin and Carol Mauthe, personal representative of the estate of Norbert Mauthe, contend that the language of the pollution exclusion clause is ambiguous and that we should resolve the ambiguity in favor of finding coverage. Because this case is controlled by prior decisions of the supreme court and the court of appeals, we affirm the trial court's decision.

The state originally commenced this action in 1982, seeking forfeitures and injunctive relief against Norbert Mauthe for violation of sec. 144.76(3), Stats. From 1960 to 1976, Mauthe owned and operated a chromium plating business in Appleton, Wisconsin. During this period, chromium acid leakage from Mauthe's facility contaminated the soil and groundwater in and around the site of his business. Mauthe's personal responsibility for the contamination was litigated, appealed, and ultimately remanded for trial. *State v. Mauthe,* 123 Wis. 2d 288, 366 N.W.2d 871 (1985).

On remand, the state impleaded the United States Fidelity and Guaranty Company (USF&G), which had issued a multiperil liability insurance policy to Mauthe for the chromium plating business. Both parties filed cross-motions for summary judgment on the insurance coverage question.

Prior to resolving the summary judgment motions, the trial court held a hearing and made factual findings to determine the cause of the contamination. Following the receipt of evidence, the trial court found

622

that the soil and groundwater contamination occurred primarily from chromic acid leaking through the floor of the building in which the chromium plating operation was conducted. On the concrete floor of the building, a channel had been constructed to convey any chromic acid that would drip or spill to the sanitary sewer. Periodically, cracks would develop in the floor and drainage channel allowing chromic acid to seep into the soil and underground water beneath the building. The cracks would be patched when business operations allowed them to dry out sufficiently to be repaired. This cracking, leaking, and repair process recurred throughout the period of 1960 to 1976.

In addition, droplets of chromic acid would develop in the air inside the building. An exhaust system removed these chromium droplets from the building and discharged them into the outside air. On one occasion, wind damaged the exhaust system and chromium droplets were dispersed over neighboring residences. The trial court found that this incident had only a minimal effect upon the contamination of the soil and groundwater.

USF&G had issued a multiperil insurance policy on Mauthe's business operations. Contained within the terms of that policy is a pollution exclusion clause that provides:

> This insurance does not apply:
> . . . .
> (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or other water

course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental ....

In granting summary judgment to USF&G, the trial court concluded that "the words 'sudden and accidental' have no mystical meaning nor do they pose any ambiguity or present any lack of clarity." The court continued that the term "sudden" is not applicable to a gradual process, apparently concluding that its clear and unambiguous meaning implied a concept of time such as abruptness or immediacy.

When reviewing the grant of summary judgment, we apply the same methodology as the trial court. *Banaszak v. Banaszak,* 133 Wis. 2d 358, 361, 395 N.W.2d 614, 615 (Ct. App. 1986). This methodolgy has been described many times, and we need not repeat it. *See, e.g., Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983).

The issue before this court is whether the phrase "sudden and accidental" contained within the pollution exclusion clause of Mauthe's multiperil liability insurance includes damages occurring over a longer period of time caused by the repeated leaks of chromic acid and the continual escape of chromium vapor from his chromium plating operations. Construction of an insurance policy presents a question of law that we resolve without deference to the trial court's determination. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985).

Two Wisconsin cases have addressed the issue whether the pollution exclusion clause excludes insurance coverage of environmental damage occurring over a long period of time. In *Clark v. London &*

*Lancashire Indemnity Co.,* 21 Wis. 2d 268, 280–81, 124 N.W.2d 29, 35 (1963), the court considered whether a similar insurance liability policy that covered damages "caused by accident" included damages arising out of the insured's operation and use of a gravel pit that exposed people and adjacent property to obnoxious fumes for long periods of time. In holding that the insurance policy did not cover these events, the court concluded that the damages did not result from "some untoward event that properly might be characterized as an accident but rather from a long continuing harmful condition." *Id.* at 279, 124 N.W.2d at 34–35. The court relied in part on an article that detailed the underwriter's intent behind the phrase "caused by accident" concluding that this interpretation was in accord with the law in most jurisdictions:

> The underwriters employed the phrase 'caused by accident,' feeling that it concisely expressed their intent that the coverage shall be limited as follows:—
>
> 1.   To injuries caused by a sudden and identifiable event with respect to both location and time. This is intended to rule out exposure injuries, incurred over a period of time, such as the harmful effects of obnoxious fumes, stream pollution, vibration or noises.

*Id.* at 283, 124 N.W.2d at 36–37 (quoting Allan P. Gowan, *Provisions of Automobile and Liability Insurance Contracts,* 30 Ins. Couns. J. 96, 101 (1963)).

The *Clark* rationale was recently reaffirmed by our court in *City of Milwaukee v. Allied Smelting Corp.,* 117 Wis. 2d 377, 385–86, 344 N.W.2d 523, 527 (Ct. App. 1983). *Allied* involved damage caused by the insured's discharge of acid into the sewer system over

a two- to ten-year period and an insurance exclusion clause nearly identical to the clause at issue in the present case.[1] The court found that "the record and common sense stand in firm refutation of" the contention that the discharges were "sudden and accidental." *Id.* In holding the exclusionary clause applicable, the *Allied* court affirmed the rationale found in *Clark* as applied to the phrase "sudden or accidental." The court reiterated:

> [I]njuries caused by a sudden and identifiable event with respect to both location and time. This is intended to rule out exposure injuries, incurred over a period of time, such as the harmful effects of obnoxious fumes, stream pollution, vibration or noises.

*Id.* at 385–86, 344 N.W.2d at 527 (citing *Clark,* 21 Wis. 2d at 283, 124 N.W.2d at 36–37).

We view these decisions as controlling the meaning of the term "sudden and accidental" as used in the pollution exclusion clause. The state argues, however, that both of the cases cited can be distinguished because they involved the insured's intentional conduct. We decline to adopt this distinction. While the conduct engaged in by the insured in each of these cases may be categorized as intentional, the courts in reaching their conclusion specifically determined that

---

[1]The clauses are identical in every respect with the exception that the exclusionary clause in *Allied* apparently contained the phrase "sudden *or* accidental," instead of "sudden *and* accidental" as used in the present case. (Emphasis supplied). The court in *Allied* used these two terms interchangeably. Furthermore, these insurance contracts are standard throughout the industry and use the phrase "sudden and accidental."

insurance coverage did not include pollution damage occurring over a long period of time. Because we are bound by this precedent, we are constrained to conclude that the term "sudden and accidental" does not apply to pollution damage occurring over a substantial period of time. Accordingly, we affirm the trial court's decision.

In so holding, we recognize that the majority of jurisdictions considering this issue have concluded to the contrary. *See Broadwell Realty Servs., Inc. v. Fidelity & Cas. Co.,* 528 A.2d 76, 83–86 (N.J. Super. Ct. App. Div. 1987), which discusses the published decisions and articles on this subject and weighs the conflicting viewpoints. The analysis followed by these jurisdictions finds that the term "sudden and accidental" is ambiguous. While the term "sudden" may mean "prompt or immediate," it is also defined as "occurring unexpectedly." When ambiguous language appears in an insurance contract, it is construed in favor of the insured and against the insurance company because the insurance company drafted the ambiguous language.

We also recognize the significant impact that this issue has on the citizens of Wisconsin. There are those who argue that public policy dictates that we construe these insurance contracts in favor of coverage. The advocates of this position point out that the social cost of repairing pollution damage is beyond the means of many companies, and without insurance coverage the enormous financial burden of cleanup falls upon the public. Tyler and Wilcox, *Pollution Exclusion Clause: Problems in Interpretation and Application Under the Comprehensive General Liability Policy,* 17 Idaho L. Rev. 497 (1981). Insurance should cover these significant financial risks because the risk is then spread

among the various industries operating within the state. *See generally* Hurwitz and Kohane, *The Love Canal—Insurance Coverage for Environmental Accidents,* 50 Ins. Couns. J. 378 (1983).

Others argue that the use of insurance to protect industry from such costs acts as a disincentive for companies to meet their responsibility to the environment. The existence of insurance removes accountability from companies for their conduct because the costs for repairing such environmental damage does not fall directly on the company. Therefore, the surest way to avoid environmental pollution damage is to hold each company financially responsible for the consequences of its acts. *See generally* Soderstrom, *The Role of Insurance in Environmental Litigation,* 11 Forum 762, 767–68 (1976).

Proponents of this position generally object to public policy considerations influencing the construction of contract language. They contend that finding coverage from such language is a perversion of the policy's clear language, violates the obvious intent of the companies drafting the insurance contract, and represents judicial activism at its worst. *See* Note, *The Pollution Exclusion Clause Through the Looking Glass,* 74 Geo. L.J. 1237, 1251–81 (1986).

Finally, while Wisconsin has addressed the meaning of the term "sudden and accidental" as it appears in the pollution exclusion clause, we note that *Clark* was decided in 1963. The resolution of that case arguably turned upon the insured's intentional conduct and was in accord with the majority of jurisdictions at that time. However, this interpretation is no longer consistent with the majority of jurisdictions that have addressed this issue.

Therefore, in an effort to remove any question as to whether *Clark* and *Allied* control the issue presented here and to review the public policy underlying such a decision in light of the tremendous changes that have occurred in our society within the last twenty-five years, we invite this state's highest court to address this matter. Any changes in its previously declared position should emanate from that court.

*By the Court.*—Judgment affirmed.