Howard WAGNER, d/b/a Citgo Quick Mart,
Plaintiff-Appellant,

v.

MILWAUKEE MUTUAL INSURANCE
COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 87-2144. Orally argued June 7, 1988.—Decided June 28, 1988.*

(Also reported in 427 N.W.2d 854.)

† Petition to review denied.

For plaintiff-appellant there were briefs and oral argument by *Paul J. Payant* of *Sommer, Olk & Schroeder,* Antigo.

For defendant-respondent there was a brief and oral argument by *David A. Piehler* of *Terwilliger, Wakeen, Piehler & Conway, S.C.,* Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Howard Wagner appeals a summary judgment dismissing his complaint and all causes of action against his insurer Milwaukee Mutual Insurance Company. Wagner contends that under the terms of a multiperil insurance policy issued to him by Milwaukee Mutual, he is entitled to recover the costs of locating a gasoline leak on his property and venting a municipal sewer line that the leaking gasoline had contaminated. The Department of Natural Resources charged these costs to Wagner pursuant to sec. 144.76(3), Stats. Because we conclude that such loss is covered under the insurance policy, we reverse and remand to the trial court for further proceedings consistent with this opinion.

While the underlying facts are not well-developed, the record discloses the following: Wagner owns a gasoline service station known as Citgo Quick Mart, located in the Village of Wittenberg. He had purchased a multiperil insurance policy covering this business from Milwaukee Mutual. This policy was in effect during the times relevant to this action. In February, 1981, a third party installed a canopy at the service station. During the installation, footings for the canopy were poured on top of pipes connecting the underground gasoline tanks to the service station pumps. This apparently cracked one of the pipes, causing gasoline to leak into the surrounding soil.

By June, 1984, gasoline odors were detected in private residences as well as the sanitary sewer line in the Village of Wittenberg. Complaints were made to the DNR, which then hired a company to determine the location of the leak. The company discovered that the gasoline was coming from a leak in a pipe located on Wagner's property, and that it was necessary to vent the gasoline from the sewer line. The total cost for locating the leak and venting the sewer was $7,593.39. Wagner was in turn billed for the cost of the clean-up pursuant to sec. 144.76(3)[1] and now seeks to recover those costs from Milwaukee Mutual.

Construction of an insurance policy presents a question of law that may be appropriately decided on summary judgment. *Kennedy v. Washington Nat'l Ins. Co.,* 136 Wis. 2d 425, 428, 401 N.W.2d 842, 844 (Ct. App. 1987). This court will reverse a trial court's decision granting summary judgment only if the trial court incorrectly decided a legal issue or material facts were in dispute. *Arnold v. Shawano County Agric. Soc'y,* 111 Wis. 2d 203, 209, 330 N.W.2d 773, 776 (1983). Because the parties have agreed that the basic facts are undisputed, this court need only address whether the trial court properly resolved the question of law regarding coverage.[2] We are not bound by the

---

[1]Section 144.76(3) imposes liability on "[a] person who possesses or controls a hazardous substance which is discharged" to "take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge ...."

[2]The parties agreed at oral argument that the record does not establish the exact cause of the leak. Milwaukee Mutual conceded, however, that in all probability the leak resulted from a crack in a pipe damaged when cement footings for the canopy were poured

trial court's decision on questions of law. *Backhaus v. Krueger,* 126 Wis. 2d 178, 180, 376 N.W.2d 377, 378 (Ct. App. 1985).

Milwaukee Mutual concedes that the damage to the pipe itself is covered under the terms of its policy, but disputes the claim that the cost of locating and cleaning up the gasoline leak is also an insured loss. While various issues were raised in the briefs, during oral argument both parties agreed that this case can be resolved by determining whether the loss arising from the cost of cleaning up the gasoline in the sewer was covered property damage as defined in the liability portion of the insurance policy[3] and, if so, whether such losses are excluded by the policy's pollution exclusion clause.

Section II of the insurance policy insures against liability for property damage to the property of third parties. The policy defines property damage as:

on it, and that this crack occurred immediately. This is corroborated in Wagner's July 10, 1987, affidavit.

[3]Whether pollution clean-up costs are recoverable under a liability insurance policy has not been addressed by the courts of this state. However, the majority of other courts who have considered the issue have found coverage. *See Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co.,* 811 F.2d 1180, 1188–89 (8th Cir. 1987); *Port of Portland v. Water Quality Ins. Syndicate,* 796 F.2d 1188, 1194 (9th Cir. 1986); *Chemical Applications Co. v. Home Indem. Co.,* 425 F.Supp. 777, 778 (D. Mass 1977); *New Castle County v. Hartford Acc. and Indem. Co.,* 673 F.Supp. 1359, 1365–66 (D. Del. 1987); *United States Aviex Co. v. Travelers Ins. Co.,* 336 N.W.2d 838, 843 (Mich. App. 1983); *Lansco, Inc. v. Department of Envtl. Protection,* 350 A.2d 520 (N.J. 1975); *but see Maryland Cas. Co. v. Armco Inc.,* 822 F.2d 1348, 1352 (4th Cir. 1987); *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chemical Co.,* 842 F.2d 977, 985, 987 (8th Cir. 1988). We agree that where there has been property damage, clean-up costs necessitated by that damage are covered under the insurance policy.

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Milwaukee Mutual argues that the presence of gasoline in increasing amounts in the sewer line is not physical injury or destruction of tangible property under subpara. (1), and that while unpleasant odors may have been emitted from the sewer, the sewers were never closed down and consequently there was no loss of use of the sewer line during the policy period under subpara. (2). Because we conclude that there was property damage as defined in subpara. (2), we do not need to address whether the presence of the gasoline in the sewer was a physical injury to tangible property under subpara. (1).

■
Milwaukee Mutual argues that for the loss of use of tangible property to meet the definition of property damage in subpara. (2) the property must be rendered totally and completely unusable. The language of the policy does not so provide. Where policy terms are unambiguous, this court merely applies those terms rather than engaging in construction. *Herwig v. Enerson & Eggen,* 98 Wis. 2d 38, 40, 295 N.W.2d 201, 203 (Ct. App. 1980).

The language of subpara. (2) provides that even when tangible property has not been physically injured, there may nonetheless be property damage in the form of loss of use "provided such loss of use is

caused by an occurrence during the policy period." Loss of use does not require abandonment of the property for any use, nor total and complete loss of use. Rather, the policy merely specifies that there must be a loss of use caused by an occurrence during the policy period. No one argues that the rupture of the pipe was not an occurrence as that term is defined in the policy or that it did not take place during the policy period.

The presence of gasoline fumes and liquid in the sewer created a dangerous condition, susceptible to either fire or explosion. This condition affected the use and safety of the sewer line and could not be ignored. Because the sewer lines could not be used without returning them to an uncontaminated state, the contamination constitutes a loss of use under the policy and the clean-up cost is a covered loss.

We next address whether the policy's pollution exclusion clause applies so as to deny coverage. The pollution exclusion clause excludes liability coverage for:

> [B]odily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, *liquids or gases,* waste materials or other irritants, *contaminants or pollutants* into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental.* (Emphasis added.)

The discharge of gasoline into the ground and sewer system is clearly the discharge of a pollutant as described in this clause. Therefore, the dispositive issue becomes whether the discharge was "sudden and accidental."

Milwaukee Mutual does not claim that the discharge was not accidental. However, it argues that the discharge was not "sudden" because it occurred over a "substantial period of time." *State v. Mauthe,* 142 Wis. 2d 620, 627, 419 N.W.2d 279, 281 (Ct. App. 1987); *see City of Milwaukee v. Allied Smelting Corp.,* 117 Wis. 2d 377, 344 N.W.2d 523 (Ct. App. 1983). These cases define "sudden" temporally rather than in terms of unexpectedness. Milwaukee Mutual reasons that even though the injury to the pipe may have been immediate, the discharge itself accumulated over a course of three years. The record discloses that while the damage to the pipe took place in 1981, the resulting leak was not discovered until 1984. Therefore, Milwaukee Mutual argues, the discharge was not "sudden" as that term is used in the policy.

We reject Milwaukee Mutual's position for several reasons. First, the discharge of gasoline was sudden. Milwaukee Mutual's reliance on the period of time that elapsed between the event that damaged the pipe and the discovery of the leak is misplaced. The gasoline began leaking immediately after the pipe was damaged in 1981, and continued to leak until it was discovered in 1984. Without question there was an immediate discharge of gasoline into the ground; it just took several years for the gasoline to migrate to a point where it could be detected. The length of time that elapsed before the leak was discovered is irrelevant as to the suddenness of the discharge. The pollution exclusion clause does not preclude coverage where there is sudden damage to a pipe and an immediate discharge of pollutants that continues uninterrupted for a prolonged period of time.

Second, following Milwaukee Mutual's argument to its logical conclusion would lead to an unreasonable result. Milwaukee Mutual admitted at oral argument that even were the pipe to be damaged accidentally, only the quantity of pollutants released immediately following the property damage would meet the requirement that the discharge be "sudden." We believe that no reasonable distinction can be made between an accident that causes an immediate discharge of pollutants in great amounts and one that creates a leak permitting great amounts of pollutants to accumulate over time. Interpreting the contract language to make such a distinction would place an unreasonable and insurmountable burden on an insured. The insured would be forced to show that the damage for which he or she is liable resulted from the initial discharge as opposed to that occurring later in time. We refuse to construe the language of an insurance policy to effectuate an unreasonable result. *Olguin v. Allstate Ins. Co.*, 71 Wis. 2d 160, 165, 237 N.W.2d 694, 697 (1976).

Finally, this case can be distinguished from both *Allied* and *Mauthe.* In those cases, the discharge occurred over a period of time. There was no sudden discharge resulting from an accident. We concluded that because the pollution discharge occurred over a period of years, it was not "sudden" within the meaning of the exception to the pollution exclusion clause. In neither case was this court faced with a situation where there was immediate damage to property, causing an immediate discharge of a pollutant that continued until its discovery several years later. Here, the damage to the pipe occurred when the canopy was negligently installed in 1981. The gasoline

began leaking immediately and continued to leak until its discovery in 1984.

■ We conclude that where there is sudden and accidental damage to property that results in the continuous discharge of pollutants into the environment for an extended period of time, the exception to the pollution exclusion clause applies and there is insurance coverage. Therefore, Wagner's insurance policy with Milwaukee Mutual provides coverage for liability he incurred pursuant to sec. 144.76(3). We need not address and do not decide the applicability of the pollution exclusion clause where the damage to property is immediate but there is a substantial delay before the discharge of the pollutant.

*By the Court.*—Order reversed and cause remanded with directions.