151 Wis.2d 593 (1989)
445 N.W.2d 683
Thomas S. JUST and Lisa P. Just, Shirley M. Bosch, Roger Dosemegan, John Walterman and Barbara Walterman, Eugene Modesti and Minnie Modesti, Gilbert L. Paar and Patricia A. Paar, Charles Domanico and Rosemarie Domanico, Thomas A. Richardson and Fern D. Richardson, Bud Ruter and Bernice Ruter, Ralph V. Tuinstra, Kenneth Waters and Kathy Waters, Thomas Weyker and Maye Weyker, Verlyn Almond and Mildred Almond, Terry A. Andersen and Bettye J. Andersen, William Bachand, John E. Baker, Jr. and Mary E. Baker, Gary K. Bartels and Mary A. Bartels, Marvin Bosteder and Joan Bosteder, Allen Depatie and Delores Depatie, Richard E. Ehmcke and Mary V. Ehmcke, Bob Eliades and Olympia Eliades, Gary Field and June Field, Patrick Garner and Susan Garner, Kermit Hansen and Louise Hansen, Hugh Hardin and Nellie Hardin, Donald Hess and Ethel Hess, May V. Holtz, Dennis J. Jalensky and Laurie A. Jalensky, Lloyd A. Johnson and Ellen A. Johnson, James G. Kairis and Sandra L. Kairis, Richard Kiehlbauch and Pearle F. Kiehlbauch, James Kimes and Linda Kimes, Walter C. Klingenmeyer and Betty Klingenmeyer, Joseph Kristan and Ilona Kristan, Steven H. Kroll and Judith R. Kroll, Jerome Kronenberg and Dorothy Kronenberg, Joseph Kurali and Irma Kurali, Daniel V. Larsen and Karen R. Larsen, Herman Lederhaus and Gertrude Lederhaus, Cary E. Manderfield and Kim M. Manderfield, John W. Mikkonen and Holly D. Mikkonen, Anita J. Oakes, Kenneth Pauls and Virginia Pauls, Myron Payne and Doris Payne, George Perdikaris and Georgia Perdikaris, Mark A. Porcaro, Mark Purdy and Faya *594 Purdy, Kurt Rasmussen and Barbara Rasmussen, Melvin Rose and Nancy Rose, Irene Roselle, James Shalbrack, Robert Smith and Jean Smith, Paul C. Sorensen, Chris Spielman and Susann Spielman, Patrick Sullivan and Janice L. Sullivan, Peter F. Tillema, Dennis Wojak and Pamela A. Wojak, Kenneth Beecher and Susan Beecher, Walter Fleuchaus and Dorothy Fleuchaus, Donald Gillette and Shirley Gillette, Daniel Jensen and Carol Jensen, Plaintiffs-Intervening-Appellants,
v.
LAND RECLAMATION, LTD., a domestic corporation, Defendant-Third Party Plaintiff-Appellant,[]
GO OF WISCONSIN, INC., a domestic corporation, Defendant-Third Party Plaintiff,
BITUMINOUS CASUALTY CORP., a foreign insurance corporation, Defendant-Third Party Plaintiff-Respondent,
v.
N. CHRISTIANSON & SON REALTY, Morgenson Century 21, Bear Realty, Remax of Wisconsin, Inc., ERA-Kraemer Realty, L.L. Freeman, Inc., Sidney J. Friedman, Olympic Homes Sales Associates, Inc., Olympic Homes Construction Corporation, Steven Kroll, Shirley Bosch, Rosemarie Domanico, Roger Dosemagen, Cary Manderfield, Kim Manderfield, John Mikkonen, Eugene Modesti, Myron Payne, James Shalbrack, John Walterman, Third Party Defendants.
No. 88-1656.
Court of Appeals of Wisconsin.
Argued May 18, 1989.
Decided July 12, 1989.
*597 On behalf of the plaintiffs-intervening-appellants, there were briefs and oral argument by Robert E. Hankel of Schoone, Hankel, Ware & Fortune, S.C. of Racine.
On behalf of the defendant-third party plaintiff-appellant, there were briefs by Joseph J. Muratore, Sr. and Joseph J. Muratore, Jr. of Joseph J. Muratore, S.C. of Racine and oral argument by Joseph J. Muratore, Sr.
On behalf of the defendant-third party plaintiff-respondent, there was a brief by J. Ric Gass and Vicki L. Arrowood of Kasdorf, Lewis & Swietlik, S.C. of Milwaukee and oral argument by J. Ric Gass.
On behalf of the Insurance Environmental Litigation Association, there were amicus curiae briefs by Robert C. Burrell of Borgelt, Powell, Peterson & Frauen, *598 S.C. of Milwaukee and Thomas W. Brunner, Marilyn E. Kerst and Christine E. Connelly of Wiley, Rein & Fielding of Washington D.C. and oral argument by Marilyn E. Kerst.
Before Scott, C.J., Brown, P.J., and Nettesheim, J.
BROWN, P.J.
Land Reclamation, Ltd. (LRL) appeals from a grant of summary judgment dismissing its insurer, Bituminous Casualty Corporation (Bituminous), from a case alleging that LRL caused and is causing environmental pollution. In the trial court, Bituminous successfully argued that the record contains neither facts nor inferences that the pollution resulted from sudden and accidental discharges, as required for coverage under the applicable insurance policies. We agree and affirm.
Plaintiffs are property owners living near a landfill site operated by LRL. Bituminous insured LRL from 1971 through 1986. The policy provisions applicable to this case provide that coverage is afforded for damage caused by occurrences. An occurrence is defined in the policies of 1972 through 1979 as:
an accident or a happening during the Policy period, including injurious exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured.
For the policies of 1980 through 1986, an occurrence is defined as:
[a]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
*599 Exclusion (f), the pollution exclusion, limited coverage during the policy period as follows:
This insurance does not apply:
. . . .
(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]
The policies further provide that:
the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage ....[1]
The pollution complained of consists of airborne dust and debris, noise, odor and contaminated water. The complaint does not pinpoint any dates of sudden and accidental occurrence during the policy periods, nor does it allege how the pollutants were released into the environment. Other evidentiary papers in the record elaborate on the complaint but also do not allege a date during the policy period on which pollutants were released or an allegation of how such pollutants were or are released.
LRL contends that the facts of record and the inferences reasonably to be drawn therefrom raise the possibility that the Bituminous policies provide coverage. The argument is essentially twofold: (1) the policies *600 provide coverage for unexpected and unintended damage from exposure to pollutants, and the complaint and the facts of record sufficiently show such damage; and (2) if unexpected and unintended damage is not sufficient for coverage and defense, then the facts of record raise an inference that the pollutants were released suddenly and accidentally. Bituminous' response is that: (1) its policy does not provide coverage for exposure to pollutants unless the pollutants were released suddenly and accidentally; and (2) there are no facts from which an inference of such release can be drawn. We address these issues seriatim.
LRL's first argument is premised on a theory that the insurance policy is ambiguous. It argues that the ambiguity arises when exclusion (f) is read in conjunction with the definition of "occurrence." It then argues that the ambiguity must be interpreted against the insurance company and that doing so results in coverage for the alleged damages.
[1-3]
Construction of an insurance policy presents a question of law that may be appropriately decided on summary judgment. Wagner v. Milwaukee Mut. Ins. Co., 145 Wis.2d 609, 612, 427 N.W.2d 854, 855 (Ct. App. 1988). Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. Katze v. Randolph & Scott Mut. Fire Ins. Co., 116 Wis.2d 206, 213, 341 N.W.2d 689, 692 (1984). Whether a contract is ambiguous is itself a question of law. Wausau Underwriters Ins. Co. v. Dane County, 142 Wis.2d 315, 322, 417 N.W.2d 914, 916 (Ct. App. 1987).
Exclusion (f), the pollution exclusion, came into use in 1970. Note, The Pollution Exclusion Clause Through the Looking Glass, 74 Geo. L.J. 1237, 1251 (1986). Since then, many courts have reviewed it and some of these *601 have indeed found ambiguity in policies that include exclusion (f). See Broadwell Realty Servs. v. Fidelity & Casualty Co., 528 A.2d 76, 83-86 (N.J. Super. Ct. App. Div. 1987), and cases cited therein. Their constructions have been succinctly summarized by the court in American Motorists Ins. Co. v. General Host Corp., 667 F. Supp. 1423, 1427-31 (D. Kan. 1987). Some courts found ambiguity in the interaction of exclusion (f) and the occurrence definition, finding that coverage could not be provided for a continuous event because such events had also to be sudden and accidental. Id. at 1427. Some courts found ambiguity in the use of the term "sudden and accidental" because it was not defined in the policy. Id. at 1428. We find, however, that the reasoning of these courts is strained and that LRL's arguments based on that reasoning are unpersuasive. Further, Wisconsin courts that previously reviewed the exclusionary language of the pollution exclusion have not found its terms ambiguous and have rejected the argument that ambiguity exists in the policies because the term "sudden and accidental" is not defined. See State v. Mauthe, 142 Wis. 2d 620, 626-27, 419 N.W.2d 279, 281-82 (Ct. App. 1987).
[4, 5]
When policies limit coverage to sudden and accidental events, Wisconsin courts limit coverage to "injuries caused by a sudden and identifiable event with respect to both location and time." City of Milwaukee v. Allied Smelting Corp., 117 Wis.2d 377, 385-86, 344 N.W.2d 523, 527 (Ct. App. 1983); see also Wagner, 145 Wis.2d at 615-16, 427 N.W.2d at 857; Mauthe, 142 Wis.2d at 626, 419 N.W.2d at 281. The term "sudden and accidental" does not apply to pollution damage occurring over a substantial period of time. Mauthe, 142 Wis.2d at 627, 419 N.W.2d at 281. There must be an accidental and "immediate" discharge. See Wagner, 145 Wis.2d at 616, 427 *602 N.W.2d at 857. "Sudden" is defined temporally and not in terms of unexpectedness. See id.
Thus, in Mauthe, coverage was denied where damage occurred as a result of periodic cracking in a concrete floor allowing repeated acid leakage, Mauthe, 142 Wis. 2d at 622-23, 419 N.W.2d at 279-80, but coverage was not denied in Wagner where a gasoline pipe was alleged to have been accidentally struck and broken causing an immediate discharge of gasoline, Wagner, 145 Wis.2d at 611, 427 N.W.2d at 855.[2]
LRL argues that the Wisconsin cases cited are not dispositive because they do not analyze exclusion (f) in light of the definition of occurrence. It states:
The Bituminous policy covers bodily injury or property damage caused by either an accident or by "continuous or repeated exposure to conditions." In this context, Exclusion (f), construed as it must be in conjunction with the new language of the insuring agreement ... creates an ambiguity which must be construed against Bituminous....

*603 .... Bituminous, unlike the insurers in the cases cited, has an obligation to defend and to pay for damages caused by an "occurrence," which by its definition includes continuous or repeated exposures. ... The change in the insuring language renders the policy ambiguous. [Emphasis in original.]
We find this argument without merit. The policy covers occurrences, but then excludes coverage for pollution-caused damages unless the pollutant is suddenly and accidentally discharged. We thus reject the view espoused by LRL that exclusion (f) is "Orwellian" in that it makes every accidental but continuous occurrence fall outside of coverage. See United States Fidelity & Guar. Co. v. Thomas Solvent Co., 683 F. Supp. 1139, 1159 (W.D. Mich. 1988).
Exclusion (f) is not completely coterminous with the definition of a "continuous and repeated exposure" occurrence. It operates to exclude only continuous pollution, not all continuous events. Continuing types of "occurrences," as defined, are covered unless the occurrences arise out of pollution events; those are not covered unless such pollution events are sudden and accidental. Read as a whole, the policy covers "continued and repeated exposure" except for exposures to pollution; then it covers only "sudden and accidental" events. American Motorists, 667 F. Supp. at 1429. Therefore, exclusion (f) does not render the "continuous and repeated exposure" clause superfluous; that clause maintains its vitality when discharge of pollutants is not at issue.
[6]
While some courts in other jurisdictions have found that exclusion (f), in light of the definition of "occurrence," is ambiguous, this itself does not render the clause ambiguous. See Bartel v. Carey, 127 Wis.2d 310, *604 316-17, 379 N.W.2d 864, 867-68 (Ct. App. 1985). This court can find that the other "meanings" posited by such courts are unreasonable. See Claussen v. Aetna Casualty & Sur. Co., 676 F. Supp. 1571, 1580 n.6 (S.D. Ga. 1987), petition for cert. filed, 865 F.2d 1217 (11th Cir. 1989). Such is the case here. We find that it strains logic to perceive ambiguity in the plain language of this policy. American Motorists, 667 F. Supp. at 1429.
We turn then to the question of whether the record reveals any dispute of material fact regarding whether the alleged pollution came about through a "sudden and accidental" discharge as that term is defined by Wisconsin law. We conclude that it does not.
[7, 8]
The purpose of summary judgment is to avoid trials when there is nothing to try. Rollins Burdick Hunter, Inc. v. Hamilton, 101 Wis.2d 460, 470, 304 N.W.2d 752, 757 (1981). We affirm grants of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Bank of Two Rivers v. Zimmer, 112 Wis.2d 624, 631, 334 N.W.2d 230, 233-34 (1983).
In this case, the determinative question is whether the facts allege or imply any sudden and accidental discharges of pollutants. It is clear that nothing in the record specifically sets forth an allegation of an immediate discharge on a specific day and time.
LRL and the plaintiffs argue that they do not know how the pollution was released. LRL states that "[t]here is a conspicuous absence of evidence ... as to what caused the alleged water contamination." The plaintiffs state, "it has yet to be determined what caused the contamination." *605 This does not raise any disputed material fact; in the absence of competing allegations as to cause, the parties are not engaged in a dispute as to cause.
[9-11]
The law gives an insured the burden of proving at trial that claims come within the coverage provision. See Glasner v. Detroit Fire & Marine Ins. Co., 23 Wis.2d 532, 536-37, 127 N.W.2d 761, 764 (1964). The burden of proving a defense, or an exception to coverage, is upon the insurer. Id. However, "sudden and accidental" is an aspect of coverage, which is LRL's burden to prove. See Fischer & Porter Co. v. Liberty Mut. Ins. Co., 656 F. Supp. 132, 140 (E.D. Pa. 1986). "`[W]hen a policy contains an exception within an exception, the insurer need not negative the internal exception; rather the insured must show that the exception from the exemption from liability applies.' 19 G. Couch, Couch On Insurance 2d sec. 79.385, at 338." Id.
Based on the record, there are no facts or inferences to be drawn upon which LRL could show an entitlement to coverage. There is, therefore, nothing to try on this issue. When Bituminous demonstrated that nothing in the record avers, pleads, alleges or implies a temporally specific discharge, it fell to LRL to show "by affidavits or other statutory means ... specific facts showing that there exists a genuine issue requiring a trial." Zimmer, 112 Wis.2d at 632, 334 N.W.2d at 234 (emphasis added). Such facts are, as LRL says, conspicuously absent.
[12]
That pollution has occurred does not of itself raise a reasonable inference of a sudden discharge. This statement does not, as LRL asserts, create a presumption that the discharge is continuous. It says no more than that the presence of pollutants can occur in such a multitude of ways that this court, like the trial court, could do *606 no more than speculate as to the cause. Speculation based on an effect without any allegations as to its cause does not rise to the level of a fair or reasonable inference. Absent the allegation of facts showing or reasonably implying a sudden and accidental discharge, LRL cannot prove coverage and Bituminous is entitled to judgment as a matter of law.
[13]
LRL, in its briefs to this court, relies heavily on the argument that experts had not been designated when summary judgment was granted, and the grant was therefore entered before it had a full opportunity to produce all pertinent facts. See Hamilton, 101 Wis.2d at 471, 304 N.W.2d at 757. And it is true that summary judgment should be denied when the trial court has doubt whether all material facts have been presented. American Orthodontics Corp. v. G&H Ins. Agency, Inc., 77 Wis.2d 337, 341, 253 N.W.2d 82, 84 (1977).
At oral argument, we specifically queried LRL as to where that argument was made to the trial court and it directed us to page 15 of its trial court brief. Such an argument does not there appear. LRL argued only that "the possibility that discovery may prove ... sudden and accidental discharge of pollution cannot be excluded." (Emphasis in original.) This is insufficient to raise the issue that LRL had insufficient opportunity to develop the necessary evidentiary record. We note too that this argument gave the trial court no idea of why further discovery may reveal what discovery up to that point has not revealed, or who is to be deposed, and it is an argument entirely speculative in nature. It asserts no more than that some fact supporting coverage might be divulged should LRL conduct a "fishing expedition" of unknown length and in unknown waters. Such an argument *607 dispels, rather than creates, doubt that the material facts of the case have been uncovered.
[14]
We hold that LRL's argument that the trial court granted summary judgment before LRL had the opportunity to depose expert witnesses for relevant information was waived. We therefore will not consider it on appeal. Driver v. Driver, 119 Wis.2d 65, 70, 349 N.W.2d 97, 100 (Ct. App. 1984).
Thus, Bituminous has no duty to defend and is entitled to judgment. The facts on summary judgment neither dispute an issue that would result in coverage nor support an inference of coverage. See Berg v. Fall, 138 Wis.2d 115, 122, 405 N.W.2d 701, 704 (Ct. App. 1987). Speculation alone cannot serve to defeat a summary judgment motion.
By the Court.Judgment affirmed.
NOTES
[] Petition to review granted.
[1] There are insignificant grammatical differences between the exclusion (f) and duty to defend clauses of the earlier and later policies that we have not reproduced in this opinion.
[2] A discharge was alleged to have occurred over a number of years following the sudden property damage and immediate discharge. Wagner v. Milwaukee Mut. Ins. Co., 145 Wis.2d 609, 611-12, 427 N.W.2d 854, 855 (Ct. App. 1988). The court affirmed the denial of summary judgment for the insurance company, noting that to require insured to trace his damage to the initial immediate discharge isolated from its continuation was unreasonable. Id. at 617, 427 N.W.2d at 857. Thus, the Wagner court appeared to follow the well-established rule that where a policy insures a loss against one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause. See Kraemer Bros., Inc. v. United States Fire Ins. Co., 89 Wis.2d 555, 570, 278 N.W.2d 857, 863-64 (1979).