**GRANT–SOUTHERN IRON & METAL COMPANY and Detroit Briquetting Company, Plaintiffs–Appellants,**

v.

**CNA INSURANCE COMPANY and Transportation Insurance Company, Defendants–Appellees.**

No. 89–1049.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1989.

Decided June 18, 1990.

Antoinette R. Raheem (argued), Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiffs-appellants.

Robert G. Kamenec (argued), Stanley A. Prokop, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for defendants-appellees.

Before BOGGS and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

This is one of three recent cases in this circuit that require the court to interpret the meaning, under Michigan law, of the "sudden and accidental" exception to

the standard pollution exclusion clause in industrial liability insurance policies. Following the interpretation of that phrase in *F L Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214 (6th Cir.1990), we hold that the phrase "sudden and accidental" has a temporal component and does not describe continuous or ongoing polluting events. However, under the facts in this case, we hold that a genuine issue of fact exists as to whether Grant–Southern's polluting resulted from a series of discrete discharges of pollutants, each of which was sudden and accidental. Therefore, we reverse the grant of summary judgment to CNA and remand the case to the district court to allow Grant–Southern to proceed with its case on that theory.

## I

Grant–Southern Iron & Steel Company and Detroit Briquetting Company (collectively "Grant–Southern") operate an iron briquetting plant in Detroit. Grant–Southern produces slag metal and Detroit Briquetting produces briquets from the slag. Emissions from the plant include certain noxious substances. The plant is equipped with pollution control devices designed to reduce the emission of these substances. CNA Insurance Company and Transportation Insurance Company (collectively "CNA") are the insurers of Grant–Southern under certain insurance policies issued by CNA over several years. The policies state:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allega-

tions of the suit are groundless, false or fraudulent....

The policies include a standard pollution exclusion clause, which provides that coverage does not apply:

> (f) To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

(Emphasis added.)

Over a span of 22 years, from 1959 to 1981, Grant–Southern received several "violation notices" from the City of Detroit and the Wayne County Department of Air Pollution Control informing it that it was in violation of air emission standards. Complaints were filed against Grant–Southern in 1978 and 1979 in Michigan courts, seeking damages for personal injury and property damage in connection with releases of air pollutants. These are, respectively, the "DeLaCruz complaint" and the "Kolasinski complaint." The complaints alleged generally that Grant–Southern "regularly and continuously discharged into the air soot, smoke, gases, fumes, fly ash, industrial dust and related substances."[1] In particular, the complaints alleged (1) violation of city, state and federal air emission standards, (2) nuisance, (3) trespass, (4) negligence, and (5) willful and wanton misconduct. Appellants settled the DeLaCruz action for $7,000.00 (plus $16,745.62 in attorneys fees and expenses) in 1981. A hearing was held in Wayne County Circuit Court in 1983 in connection with the Kolasinski action to determine whether a preliminary injunction should be issued to enjoin Grant–Southern from emitting pollutants. The court issued the injunction. In November 1983, Grant–Southern requested that CNA undertake the defense of the

---

**1.** Excerpt taken from the DeLaCruz complaint. The Kolasinski complaint contains substantially similar language.

Kolasinski matter. In a letter dated January 1984, CNA refused to undertake the defense on the ground that the actions alleged in the complaints did not fall within the "sudden and accidental" exception. Grant–Southern subsequently settled the Kolasinski action for $540,000.00 (plus $186,851.15 in attorney fees and expenses.)

Grant–Southern brought the present action against CNA in the district court seeking a declaratory judgment and damages in connection with CNA's duty to defend and indemnify Grant–Southern in the underlying cases. The district court, in successive rulings in 1986 and 1988, denied Grant–Southern's motions for partial summary judgment as to the insurer's duty to defend in the Kolasinski and DeLaCruz actions and granted CNA's motions for summary judgment in opposition.[2] The court found that the complaints in the underlying actions described pollution that did not fall within the "sudden and accidental" exception. It ruled that because the complaints alleged "continuous and ongoing" pollution, the occurrences were not "sudden," and because the pollution had continued after repeated warning notices had been sent to Grant–Southern, the occurrences could not have been "accidental."

On appeal, Grant–Southern seeks reversal of the summary judgment for CNA, entry of partial summary judgment for appellants on the issue of CNA's duty to defend, and remand of the case to the district court for further fact finding on the issue of the duty to indemnify.

## II

### A. *"Sudden and Accidental"*

The meaning of the phrase "sudden and accidental" is a point of contention in this case. Grant–Southern argues that under Michigan law, "sudden and accidental" discharges of pollutants can include discharges that are made over a period of time if those discharges are unexpected and unintended. Appellants cite the Michigan appellate court case of *Jonesville Products v. Transamerica Insurance Group*, 156 Mich.App. 508, 402 N.W.2d 46 (1986), in which the court held that continuous discharges of waste did not necessarily fall outside the coverage of the "sudden and accidental" exception to the standard pollution exclusion clause in insurance policies. It was possible, the court said, "that the releases could have been sudden, i.e., unexpected, and accidental, i.e., unintended, and thus outside the [pollution clause] exclusion." *Id.* 402 N.W.2d at 48. By equating "sudden and accidental" to "unexpected and unintended", Grant–Southern argues that the continuous nature of the pollution as alleged by the plaintiffs in the underlying complaints does not bar recovery under the insurance policies and the grant of summary judgment to CNA was therefore in error.

CNA argues that the plain language of the phrase "sudden and accidental" is unambiguous; it incorporates a temporal quality that implicitly excludes actions that take place over time. CNA urges this court to reject the position taken by the Michigan Court of Appeals in *Jonesville*, noting that the Michigan Supreme Court has not addressed the issue of the interpretation of "sudden and accidental."

It is a reflection of the common use of the "sudden and accidental" exception in insurance policy pollution exclusion clauses that the phrase has instigated such an impressive amount of litigation.[3] This court

---

**2.** The district court's 1986 opinion on the summary judgment motion with regard to CNA's duty to defend in the Kolasinski matter appears at 669 F.Supp. 798 (E.D.Mich.1986). The 1988 opinion was unpublished.

**3.** See, for example, *Claussen v. Aetna Casualty & Surety Co.*, 865 F.2d 1217 (11th Cir.1989), aff'g, 676 F.Supp. 1571 (S.D.Ga.1987) ("sudden" has a temporal element), *question certified to,* 259 Ga. 333, 380 S.E.2d 686 (1989) (no temporal element); *Industrial Indemnity Ins. Co. v. Crown Auto Dealerships, Inc.*, 731 F.Supp. 1517 (M.D. Fla.1990) (temporal element); *Ray Industries, Inc. v. Liberty Mutual Ins. Co.*, 728 F.Supp. 1310 (E.D.Mich.1989) (temporal element); *Becker Electronics Manufacturing Corp. et al. v. Granite State Ins. Co.*, No. 86–CV–1294 unpublished, 1989 WL 63671 (N.D.N.Y. June 12, 1989) (temporal element); *Du–Wel Products, Inc., et al. v. United States Fire Ins. Co., et al.*, 236 N.J.Super. 349, 565 A.2d 1113 (App.1989) (no temporal element); *Powers Chemco, Inc. v. Federal Ins.*

has examined the phrase on at least three occasions. Each time, it has interpreted the phrase as incorporating a temporal element. In *United States Fidelity & Guaranty Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988), our court, interpreting Kentucky law, ruled that the phrase "sudden and accidental" was unambiguous and that it described a polluting event " 'not only in terms of its being unexpected, but in terms of its happening instantaneously or precipitantly.' " *Id.* at 34, quoting *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374, 382 (1986). In *International Surplus Lines Ins. Co. v. Anderson Development Co.*, 901 F.2d 1368 (6th Cir.1990), our court sought an interpretation of the phrase under Michigan law by certifying the question to the Michigan Supreme Court, which ultimately declined to address it. In the meantime, the United States District Court for the Eastern District of Michigan held that the decision in *Jonesville* did not bind federal courts in diversity actions. *Fireman's Fund Insurance Companies v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1324–25 (E.D.Mich.1988). Finally, in *F L Aerospace v. Aetna Casualty & Surety Co.*, 897 F.2d 214 (6th Cir.1990), our court held that the phrase "sudden and accidental" was not ambiguous under Michigan law and that the position taken by the court in *Jonesville* distorted the plain meaning of the language, which implicitly excludes occurrences of pollution that are continuous or ongoing.[4]

The decision in *F L Aerospace* establishes the law in Michigan diversity cases for the interpretation of the sudden and accidental exception. There is nothing in the circumstances of this case that would indicate a deviation from that interpretation. If the pollution that formed the basis of the DeLaCruz and Kolasinski actions against Grant–Southern was a continuous or ongoing occurrence, then the sudden and accidental exception does not apply and there is no duty for CNA to defend or indemnify Grant–Southern under the policies, regardless of whether the polluting event was expected or intended by Grant–Southern.

### B. *Remand for determination of pollution occurrences*

Although we reject the argument that continuous and ongoing polluting can fall within the "sudden and accidental" exception to the pollution exclusion, there remains a genuine issue of fact in this case as to whether Grant–Southern's polluting was sudden and accidental even under the standard enunciated in *F L Aerospace* and followed in this opinion. Although Grant–Southern's primary argument was that this court should follow the *Jonesville* interpretation of sudden and accidental, Grant–Southern also maintains that whatever damages were caused by its discharges of pollutants may have been the result of a few discrete polluting events, each of which was short in duration and accidental in nature. If that is the case, then the pollution alleged in the underlying state actions could properly fall within the "sudden and accidental" exception and CNA would be obligated to defend and indemnify Grant–Southern in those actions. This is consistent with the Michigan principle of construing insurance policies in favor of the insured in the case of ambiguities. *Raska v. Farm Bureau Mutual Ins. Co.*, 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982).

There is conflicting evidence on the question of whether Grant–Southern's pollution

Co., 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989) (temporal element); *Just v. Land Reclamation, Ltd.*, 151 Wis.2d 593, 445 N.W.2d 683 (App.1989) (temporal element), *petition for rev. granted*, —— Wis.2d ——, 449 N.W.2d 275 (1989).

**4.** The Michigan Court of Appeals now seems to be divided on the question of whether "sudden and accidental" includes a temporal element. Several cases follow *Jonesville*. *Polkow v. Citi-*

*zens Ins. Co. of America*, 180 Mich.App. 651, 447 N.W.2d 853 (1989); *Upjohn Co. v. New Hampshire Ins. Co.*, 178 Mich.App. 706, 444 N.W.2d 813, 817 (1989); *Shue v. D & B Brine Inc.*, No. 92404 (Mich.App. July 27, 1987). However, in *Chemetco, Inc. v. Citizens Ins. Co. of America*, No. 109913 (Mich.App. February 13, 1990), a 2–1 majority held that ongoing pollution does not fall within the "sudden and accidental" exception.

was ongoing and continuous or consisted of discrete and isolated events. The complaints in the two underlying actions alleged continuous and ongoing pollution in general terms but did not specify the nature of the polluting events. The DeLaCruz matter was settled before any findings were made. In the Kolasinski matter, the Wayne County Circuit Court found that Grant–Southern's equipment, when operating properly, was 99.9% efficient in controlling air emissions, but that the equipment had not operated properly and pollution had occurred. The court made no finding as to how often Grant–Southern had failed to operate the equipment properly or the circumstances under which it had allowed excess emissions to escape from its premises. It is significant that the Wayne County court was only deciding the issue of whether Grant–Southern should be enjoined from polluting and did not address the issue of precisely how the pollution occurred. The court took testimony from the plant's neighbors that "orange dust settled on everything," discoloring homes and cars and accumulating on roofs. There was testimony that smoke often came from the plant and that truck traffic stirred particulate matter on the roads around the plant. The court also heard from experts who testified to an unusually high amount of iron oxide, a by-product of the briquetting process, in the area surrounding the plant.

The record contains 34 pollution violation notices issued to Grant–Southern by the City of Detroit and the Wayne County Department of Health over the span of 22 years, from 1959 to 1981. The notices cite violations of air emission standards based on visual observation, "area sampling", and opacity tests. Several of the notices are stamped with the word "complied." Others note remedial steps taken by Grant–Southern to correct the violations. These facts suggest isolated polluting events. On the other hand, several of the notices occur within close chronological proximity of each other, suggesting ongoing pollution. The violation notices are thus consistent with both theories; that the pollution was continuous and regular and that the

polluting occurred in isolated and discrete polluting events.

Grant–Southern's emissions resulted from the failure of the plant's "baghouse" equipment. According to Grant–Southern, before air is discharged, it is strained through bags that filter the particulate matter while letting clean air pass. The bags are supposed to be cleaned every day by blowing air down through the bag in the opposite direction from the usual flow for five minutes, causing the particulates to fall into a hopper. Grant–Southern maintains that when the process is working properly, damaging pollution should not occur. A 1981 inspection of the baghouse revealed several defects in the operation. The resulting violation notice contains a later notation indicating that repairs were made to bring the baghouse operation into compliance.

The district court relied heavily on the fact that the complaints in the underlying state actions alleged regular and continuous emissions to conclude that no jury question existed. It did not look beyond the complaint to review Grant–Southern's operation and the circumstances of the individual violations to determine whether the emissions were continuous and ongoing or sudden and accidental.

### III

The evidence indicates that a genuine issue of fact exists as to whether the pollution alleged in the underlying state actions was sudden and accidental within the meaning of that phrase as interpreted by this court. We therefore reverse the summary judgment granted to appellees and remand the case to the district court to allow Grant–Southern to proceed with its case on the theory that its damaging pollution consisted of a few discrete and isolated occurrences and was not continuous and ongoing.

The judgment of the district court granting summary judgment to CNA is REVERSED.