**MARYLAND CASUALTY COMPANY and Northern Insurance Company of New York, Plaintiffs,**

v.

**WAUSAU CHEMICAL CORPORATION and James E. Cherwinka, Defendants,**

v.

**CONTINENTAL INSURANCE COMPA-NY and Hallmark Insurance Company, Third–Party Defendants.**

No. 91–C–479–C.

United States District Court, W.D. Wisconsin.

Dec. 8, 1992.

As Amended Dec. 16, 1992.

682

Richard A. Hollern, Madison, WI, for Maryland Cas. Co., Northern Ins. Co.

Steven P. Means, Michael, Best & Friedrich, Madison, WI, for Wausau Chemical Corp.

Raymond R. Krueger, Michael, Best & Friedrich, Madison, WI, for James E. Cherwinka.

Victor J. Piekarski, Querrey & Harrow, Chicago, IL, for Hallmark Ins. Co., Continental Ins. Co.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for declaratory relief. Maryland Casualty Company seeks a declaration that it has no obligation to defend or indemnify Wausau Chemical Corporation or its president, James E. Cherwinka, in connection with claims asserted against Wausau Chemical by the United States and State of Wisconsin that were resolved in a consent decree. Wausau Chemical filed a counterclaim against Maryland Casualty and a supplemental counterclaim against Continental Insurance Company and Hallmark Insurance Company seeking a money judgment of indemnification and a declaration that Maryland Casualty, Continental and Hallmark are obligated under certain insurance policies they issued to indemnify Wausau Chemical for all sums that Wausau Chemical has paid or will be legally obligated to pay in complying with the consent decree. This court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

The case is before the court on motions for summary judgment by Maryland Casualty, Wausau Chemical, Continental and Hallmark. Maryland Casualty denies coverage for the following reasons: (1) the government suits do not seek covered "damages" from Wausau Chemical under the policies; (2) Wausau Chemical failed to provide timely notice to Maryland Casualty as required by the policies; (3) the obligations assumed by Wausau Chemical under the consent decree constitute voluntary payments not covered under the policies; (4) the government suits and consent decree concern environmental contamination arising from chemical spills that took place after the termination of the policies; and (5) Wausau Chemical is estopped from seeking coverage for claims asserted in EPA's General Notice Letter because of Wausau's failure to inform this court of the pendency of those claims at the time Wausau sought dismissal of Maryland Casualty's previous declaratory judgment suit.

Continental and Hallmark deny coverage for several of the reasons listed above as well as five additional reasons: (1) the underlying actions do not seek damages for "property damage" as defined by the policies; (2) coverage is excluded to the extent that the alleged property damage is to property owned by Wausau Chemical; (3) the environmental contamination began and was known to Wausau Chemical before

it purchased the policies; (4) to the extent that the claims arise out of the December 1983 spill, that spill did not occur during the policy periods; and (5) the November 1988 release precludes coverage under the policies.

I find that (1) the damages at issue in the government suits are covered "damages" under the policies; (2) the damages are "property damages" under the policies; (3) "owned-property" exclusions do not foreclose coverage in this case; (4) the insurers have suffered no prejudice from any alleged untimely notice of occurrence or suit; (5) the principle of fortuity and exclusion for known risks do not apply in this case; and (6) there is no basis for estoppel. I find also that there are disputed facts concerning when the environmental damage occurred, which policies applied during those periods and how damages should be allocated among the insurers.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party

is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

For the purposes of deciding these motions only, I find from the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

### The Parties

Plaintiff Maryland Casualty Company is incorporated under the laws of Maryland, has its principal place of business in Baltimore, Maryland, and is engaged in the business of providing and underwriting insurance, including the extension of liability insurance. Plaintiff Northern Insurance Company of New York is incorporated under the laws of New York, has its principal place of business in Baltimore, Maryland, is a wholly-owned subsidiary of Maryland Casualty, and is engaged in the business of providing and underwriting insurance, including the extension of liability insurance. Defendant Wausau Chemical Corporation is incorporated under the laws of Wisconsin, has its principal place of business in Wausau, Wisconsin, and is a supplier of chemicals and related products. Defendant James E. Cherwinka is an individual resident of Wisconsin and has been the president, treasurer, and chief executive officer of Wausau Chemical at all times relevant to this action. Third-party defendant Hallmark Insurance Company is incorporated under the laws of Wisconsin, has its principal place of business in Philadelphia, Pennsylvania, and is engaged in the business of providing insurance. Third-party defendant Continental Insurance Company is incorporated under the laws of New Hampshire, has its principal place of business in New York, New York, and is engaged in the business of providing insurance.

### The Maryland Casualty and Northern Policies

Maryland Casualty and Northern issued primary general liability insurance policies to Wausau Chemical for the period February 21, 1967 to February 21, 1982, and excess insurance policies for the period May 6, 1974 to March 1, 1982.

Certain of the primary policies issued by Maryland Casualty and Northern to Wausau Chemical obligated the insurer to indemnify the insured for:

all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence....

Certain of the umbrella policies issued by Maryland Casualty to Wausau Chemical obligated the insurer to:

indemnify the insured for ultimate net loss in excess of the retained limit which the Insured by reason of liability imposed upon the Insured by law or assumed by the Insured by contract or agreement, shall become legally obligated to pay as damages because of ... Property Damage Liability ... to which this policy applies, caused by an occurrence.

These policies define "occurrence" as:

an accident or event including continuous or repeated exposure to conditions which results in personal injury or property damage neither expected nor intended from the standpoint of the insured.

The policies define "property damages" as: (a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policies require compliance with certain notice of occurrence provisions as a precondition of coverage:

In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, ... shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

or

When an occurrence takes place which in the opinion of the Insured, involves or may involve liability on the part of the Company, prompt written notice shall be given by or on behalf of the Insured to the Company or any of its authorized representatives.

Some of the policies add that:

Failure to so notify [Maryland Casualty] of any occurrence which at the time of its happening did not appear to involve this policy but which at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

The policies also require compliance with notice of claim provisions as a precondition of coverage:

If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

or

The Company shall have the right and shall be given the opportunity to associate with the insured or its underlying insurers, or both, in the defense and control of any claim, suit or proceeding which involves or appears reasonably likely to involve the Company.

Finally, the primary policies provide as precondition of coverage that:

The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

The excess policies similarly provide as a precondition of coverage that:

The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence.

### The Continental and Hallmark Policies

Continental issued a primary general liability insurance policy to Wausau Chemical for the period August 31, 1983 to August 31, 1986, and umbrella policies for the peri-

od August 31, 1983 to August 31, 1985. Hallmark issued primary general liability insurance policies to Wausau Chemical for the period February 21, 1982 to August 31, 1983, and umbrella policies for the period March 1, 1982 to August 31, 1983. Certain of the primary and umbrella policies issued by Hallmark and Continental to Wausau Chemical obligated the insurer to:

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence....

The policies define "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
>
> (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policies define "occurrence" as:

> an accident, including continuous or repeated exposure to conditions, which results in property damage neither expected nor intended from the standpoint of the insured.

Certain of the Hallmark and Continental policies contain the following condition:

> (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonable obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.
>
> (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
>
> (c) ... The insured shall not, except at his own cost, voluntarily make any pay-

ment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.

Certain of the Continental and Hallmark policies contain the following exclusion:

> This insurance does not apply ...
>
> (k) to property damage to
>
> (1) property owned or occupied by or rented to the insured,
>
> (2) property used by the insured, or
>
> (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; ...

The Hallmark and Continental umbrella policies contain language concerning coverage for property damage, written notice in the case of an occurrence, claim or suit, and voluntary payment that is substantially similar to the language quoted above. The Continental and Hallmark umbrella policies contain the exclusion quoted above relating to property owned, rented to, occupied or used by the insured.

### The Wausau Chemical Site

Wausau Chemical has been engaged in the business of selling detergents, laundry and dry cleaning products and chemicals since 1964 at its North River Drive site. Chemicals sold by Wausau Chemical from the North River Drive plant include the solvents perchloroethylene (also known as tetrachloroethylene), trichloroethylene, xylene, and toluene.

In the late 1960's or early 1970's, an unknown quantity of perchloroethylene was spilled from a railroad tank car on the railroad right-of-way adjacent to Wausau Chemical, about 200 feet to the east of the Wausau Chemical plant. In approximately 1974, an unknown quantity of acetone was spilled at Wausau Chemical. In or about November 1981, approximately 100 gallons of mineral spirits were spilled at Wausau Chemical. Between December 1982 and February 1983, about ten gallons of perchloroethylene were spilled in the truck bay within the Wausau Chemical plant. On or about February 15, 1983, 137 gallons of perchloroethylene were spilled at Wausau Chemical, on a loading dock located near

the northwest corner of the plant. In April 1983, approximately 10 to 15 gallons of a solvent blend were spilled. On December 19, 1983, approximately 800 to 900 gallons of perchloroethylene were spilled from a bulk storage tank located in Wausau Chemical's "tank farm." The tank farm, which has since been removed, was located on the south end of the Wausau Chemical plant. Wausau Chemical did not notify Maryland Casualty, Continental or Hallmark of the spills.

In May 1975, the City of Wausau encountered strong odors when it began excavation for an addition to its water treatment plan located immediately to the south of Wausau Chemical's North River Drive facility. Analysis of the groundwater at the construction site by the Wisconsin Department of Natural Resources indicated the presence of perchloroethylene, trichloroethylene, xylene and toluene. The department issued an Emergency Order to Wausau Chemical on June 24, 1975, requiring Wausau Chemical to "immediately cease any activity on its [North River Drive] property which will allow the entrance of further chemical contaminants in the groundwater and soils of the state" and to make "improvements on its ... facility and operations ... to assure that no chemicals stored in or handled at said facility enter the soils or waters of this state...." Also, the Department of Natural Resources ordered Wausau Chemical to "institute a Department approved testing program to determine the extent of the groundwater and soils pollution" and to submit to the department a "plan for removal of chemicals from the soils and groundwater by [Wausau Chemical], or, other alternatives which will be provided to protect groundwater contamination." At a hearing held on the Emergency Order, Wausau Chemical and the department agreed to a stipulation under which Wausau Chemical would install a test well on City of Wausau property between the Wausau Chemical plant and the city's well # 4. Wausau Chemical would then test groundwater samples for contamination and report results to the department. The departmental hearing was adjourned indefinitely pending the results of this testing.

*The 1984 EPA Removal Action*

In June 1984, the United States Environmental Protection Agency initiated a removal action in response to contamination of groundwater at the Wausau Groundwater Contamination Site, which encompassed all groundwater used for the City of Wausau's water supply. The removal action included the installation of a Granular Activated Carbon system and an air stripper to treat the contaminated groundwater and investigation to define the threat to the environment. On August 15, 1984, Wausau Chemical notified its insurers of the EPA and Wisconsin Department of Natural Resources investigations of the chemical spills. Maryland Casualty responded first that it would conduct an investigation, and later stated that it would decline coverage and that it could not take any action on behalf of Wausau Chemical until a formal lawsuit had been filed against Wausau.

On or about December 2, 1985, Wausau Chemical received a letter from EPA giving notice of contamination of the Wausau Wisconsin groundwater. In the letter, the EPA requested that Wausau Chemical undertake certain removal or remedial action to address the groundwater contamination under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* The EPA added:

> You should be aware that under Section 107(a) of CERCLA, where the Agency uses public funds to achieve the cleanup of the hazardous substance, you may be liable for all costs associated with the removal or remedial action and all other necessary costs incurred in cleaning up the City of Wausau groundwater, including investigation, planning and enforcement.

Upon receipt of the December 2, 1985 letter, Wausau Chemical began a series of negotiations with EPA and other potentially responsible parties regarding the environmental response and cleanup requested. On January 8, 1986, Wausau Chemical

gave notice of the December 2, 1985 letter to its insurers.

On or about June 10, 1986, the "Wausau Groundwater Contamination Site" was placed on the National Priorities list set forth in 40 C.F.R. Part 300, App. B, by publication in the Federal Register.

### The 1987 United States Suit

In November 1987, the United States filed suit against Wausau Chemical and James E. Cherwinka in this court, alleging that hazardous substances, including perchloroethylene, had been detected in groundwater beneath the Wausau Chemical facility, in groundwater in the Wausau Contamination Site, and in tap water originating from the City of Wausau's wells. *United States v. Wausau Chemical Corp.,* No. 87–C–919–C (W.D.Wis.). In the amended complaint the United States requested relief against Wausau Chemical as follows:

(A) Enter judgment against the defendants, and each of them, jointly and severally, for response costs, including administrative, investigative and enforcement costs, and including interest on all response costs, incurred by the United States under CERCLA, 42 U.S.C. § 9601 *et seq.,* in connection with the Wausau Groundwater Contamination Site;

(B) Enter a declaratory judgment that defendants are liable for future response costs incurred by the United States at the Wausau Groundwater Contamination Site;

(C) Award such other relief as this Court may deem necessary and appropriate.

On November 16, 1987, Wausau Chemical gave notice to its insurers of the United States' demand for payment of damages. Maryland Casualty responded that it would decline the request for defense and indemnification based on alleged inadequacy of coverage and because of its belief that the EPA suit did not fall within general liability insurance coverage.

In a letter dated December 3, 1987, Wausau Chemical tendered the 1987 United States suit to Maryland Casualty stating that Maryland Casualty "has an obligation under the policies ... to pay the cost of defense and to cover any liability which may accrue to Mr. Cherwinka and Wausau Chemical Corporation by virtue of the lawsuit."

### The 1988 Declaratory Judgment Suit

On February 17, 1988, Maryland Casualty filed a declaratory judgment suit in this court seeking a declaration that it had no obligation to defend or indemnify Wausau Chemical in connection with the 1987 United States suit. *Maryland Casualty v. Wausau Chemical Corporation,* No. 88–C–118–C (W.D.Wis.). On or about October 12, 1988, Wausau Chemical received a "Special Notice of Potential Liability" from EPA regarding the Wausau Groundwater Contamination Site. Upon receipt of the October 12, 1988 Notice, Wausau Chemical continued negotiations with EPA and other potentially responsible parties regarding the environmental remediation and related matters. On December 1, 1988, Maryland Casualty filed a motion for summary judgment in the 1988 declaratory judgment suit.

Shortly before its opposition to Maryland Casualty's motion for summary judgment was due, Wausau Chemical notified Maryland Casualty that it was "withdrawing [its] demand for a defense and indemnification with regard to the action commenced against [it] by the United States of America." Wausau Chemical filed a motion for dismissal of the 1988 declaratory judgment suit on the ground that the suit was moot or not ripe for adjudication. In support of the motion for dismissal, Wausau Chemical stated that the parties to the 1987 United States suit were "close to a final resolution of the action," which Wausau Chemical characterized as solely an action to recover the United States' past response costs of $459,718. On May 16, 1989, this court offered Wausau Chemical an opportunity to submit additional materials in support of its motion to dismiss because it was unclear whether a proposed settlement between EPA and Wausau Chemical would dispose of the claim for defense and indemnification.

Also on May 16, 1989, EPA sent Wausau Chemical a General Notice Letter in which it stated that EPA had initiated a Remedial

Investigation Feasibility Study at the Superfund Site that would identify appropriate remedial action at the site. EPA stated further that as a potentially responsible party, Wausau Chemical was required to notify EPA in writing within 14 days of receipt of the letter of its willingness to perform or finance the selected remedial action. Finally, EPA stated that it had already undertaken certain actions and incurred certain costs in response to conditions at the site totalling $1,876,436.11 for which it demanded payment with interest pursuant to Section 107(a) of CERCLA.

On May 26, 1989, Wausau Chemical responded to the court's invitation to submit further support for its motion to dismiss, stating that the proposed consent decree being negotiated with EPA concerned the $459,718.00 demanded in the United States' amended complaint, that the motion to dismiss concerned only a claim for defense and indemnification of that amount, and that

> WCC and Cherwinka are unable, at this time, to waive any and all right they have against Maryland Casualty for any and all future response costs above the $459,718.00 demanded in [the 1987 United States suit]. Too much uncertainty exists with respect to the future of groundwater cleanup in Wausau for WCC and Cherwinka to state that they will never again be faced with a claim from a government agency or another third party that would qualify for insurance indemnification and defense from Maryland Casualty.

Four days later, Wausau Chemical responded to EPA's May 16, 1989 letter by stating that

> Wausau Chemical Corporation hereby advises EPA that, as a listed potentially responsible party, it intends to negotiate a resolution of its purported responsibility in connection with the site described by EPA as the "Wausau groundwater contamination site." We anticipate that these negotiations will include future response activities.

On June 12, 1989, this court issued an order dismissing the 1988 declaratory judgment suit on the ground that no claim ripe for adjudication remained in the action. The motion to dismiss was granted "without prejudice to any third-party claims and cross-claims asserted against defendants and tendered by them to plaintiff for defense, and without prejudice also as to those claims that are not ripe for adjudication."

On November 18, 1988, Wausau Chemical and Cherkwinka executed a release in favor of Continental and Hallmark in connection with an action commenced in Wisconsin state court by Wausau Chemical against Continental, *Wausau Chemical Corporation v. Continental Ins. Co.*, No. 667–641 (Milwaukee County Cir.Ct.), and a third-party action commenced in this court by Wausau Chemical against Continental, Hallmark and other insurance companies for a declaration of coverage relating to the United States suit. *United States v. Wausau Chemical Corp.*, No. 87–C–919–C (W.D.Wis.). The November 1988 release provides in relevant part:

> Releasors ... hereby release and forever discharge Continental and Hallmark ... from any and all claims, damages, actions and demands as set forth in the complaint in the Circuit Court Actions ... and in the Western District Action
>
> . . . . .
>
> Releasors expressly reserve, save, maintain and preserve their right and ability to make claim against and demand upon Releasees for defense and indemnification with respect to: all other claims, actions and demands which may be asserted or commenced against Releasors by the United States ... including, but not limited to, ... those claims, actions, or demands which may arise in connection with the request or demand by the United States for recovery of administrative, investigative and enforcement costs for its RI/FS and/or remedial and/or any other action under CERCLA or SARA; and any or all other claims ... which may be asserted ... by any third parties ...

*Negotiation of the 1990 Consent Decree*

On June 20, 1989, Wausau Chemical wrote the other potentially responsible parties confirming a June 28 meeting and forwarding a copy of the order dismissing the 1988 declaratory judgment suit. On December 8, 1989, EPA sent Wausau Chemical a Special Notice Letter asking Wausau Chemical to submit to EPA within 60 days a good faith offer demonstrating its qualifications and willingness to conduct or finance the remedial design and remedial action consistent with the Record of Decision for the site adopted by EPA and to agree to reimburse EPA for past response costs of $1,876,436.11. Wausau Chemical did not provide notice of this letter to Maryland Casualty, Continental or Hallmark. On December 19, Wausau Chemical advised EPA that it was willing to participate in negotiations and intended to present a good faith proposal within 60 days.

On April 18, 1990, EPA issued an ultimatum, stating that it would "proceed with issuance of a unilateral order and will initiate cost recovery procedures if you [Wausau Chemical] do not accept [EPA's] terms by close-of-business today, April 18, 1990." The potentially responsible parties agreed to EPA's terms. In May 1990, Wausau Chemical submitted to EPA executed signature pages of the consent decree. On September 10, 1990, the potentially responsible parties authorized EPA to attach the signature pages to the final consent decree. The Consent Decree was filed with this court on or about November 7, 1990. Wausau Chemical did not give Maryland Casualty, Hallmark or Continental notice of the negotiations and consent decree entered into with EPA and the other potentially responsible parties.

The final remedy for the Wausau Groundwater Contamination Site is described in the "Scope of Work" document attached to the consent decree. The final remedy is directed to "three identified source areas": two source areas located at Wausau Chemical and a third on the other side of the river from the Wausau Chemical property. Wausau Chemical is not responsible for the cleanup of the third source area.

*The 1990 Government Suits*

On or about November 15, 1990, Wausau Chemical was named as a party defendant in two actions filed in this court relating to the Wausau Groundwater Contamination Site. *United States v. Marathon Electric Corp.,* Case No. 90–C–831–C (W.D.Wis.) and *State of Wisconsin v. Marathon Electric Manufacturing Corp.,* Case No. 90–C–889–C (W.D.Wis.). In the EPA action, The United States requested, in relevant part, that the court

1. Order the City of Wausau, MEMCO, WCC and James Cherwinka to take all actions necessary to remedy the conditions of the Wausau Site that may present an imminent and substantial endangerment to the public health or welfare of the environment; including implementation of the remedy selected in the September 29, 1989 EPA Record of Decision.

2. Enter judgment against the City of Wausau, MEMCO, WCC and James Cherwinka for all costs incurred by the United States in connection with the response actions taken at the Wausau Site, plus appropriate interest.

In the other action, the State of Wisconsin requested judgment as follows:

1. A money judgment against defendants for all response costs incurred by the state in connection with the facility.

2. A declaratory judgment that defendants are jointly and severally liable for all future response costs to be incurred by the state in connection with the site.

On December 18, 1990, Wausau Chemical gave notice of the United States action and Wisconsin state action to its insurers. Maryland Casualty responded that it had no obligation to defend or indemnify Wausau Chemical in these suits on a number of grounds: that the suits did not bring claims for damages under the policies, that the claims were not for property damages under the policy, that there was no occurrence during the policy period, that notice was late and other grounds.

The federal and state actions were consolidated and resolved pursuant to a con-

sent decree entered by this court on January 24, 1991, in which Wausau Chemical agreed to implement "the final remedial design and remedial action for the Facility selected by USEPA, as set forth in the interim and final Records of Decision ... and to provide for payment of certain costs incurred and to be incurred by the United States and the State."

## OPINION

This case raises several important issues concerning the scope of environmental insurance coverage under Wisconsin law. All of the insurance policies at issue are standard form comprehensive general liability policies and will be analyzed together for the purpose of this opinion.[1]

*Superfund Response Costs as Damages*

■ All parties acknowledge that the Supreme Court of Wisconsin has not decided whether response costs are damages under Wisconsin law. The insurers argue that they are under no duty to indemnify Wausau Chemical for any liability arising from the government suits or the 1990 consent decree because the costs associated with responding to actions brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*, are not "damages" within the meaning of the relevant insurance policies. According to the insurers, the policies provide coverage for "all sums which the insured shall become legally obligated to pay as damages because of property damages" and the term "damages" modifies and limits "all sums." The insurers argue for a reading of "damages" that is limited to forms of redress to reimburse a party for past loss and excludes injunctive or forward-looking relief. ·

In support of their argument, the insurers cite the recent decision by the Supreme Court of Wisconsin, *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis.2d 347, 488 N.W.2d 82 (1992). In that case, two school districts had settled a discrimination

suit and, as part of the settlement agreement, had agreed to implement programs, committees and offices aimed at decreasing segregation within the school system. The school districts looked to its insurers to indemnify them for the cost of complying with the settlement agreement. In holding that the insurance policies did not provide coverage for the injunctive relief and programs at issue, the court found that "damages" was unambiguous as used in the insurance policies: it meant legal damages, which constitute compensation for past wrongs and "do not encompass the cost of complying with an injunctive decree." *Shorewood*, 488 N.W.2d at 89. According to the court, the insurer agreed to pay "all sums which the insured shall become legally obligated to pay as damages," not simply "all sums." The court went on to say that a reading of damages to include injunctive relief would render the phrase "as damages" mere surplusage. *Id.* at 90.

The insurers contend that the distinction drawn by the court in *Shorewood* between legal damages and injunctive relief applies equally in this case: the language of the policies at issue here is identical to that in *Shorewood* and the remedial cleanup work Wausau Chemical will be responsible for under the 1990 consent decree is akin to injunctive relief because it is forward-looking in nature. The insurers also point to several cases in which courts in other jurisdictions that have held expressly that CERCLA response costs are not covered under comprehensive general liability insurance policies, drawing the distinction made in *Shorewood* between legal damages and other forms of relief. *See Continental Ins. Cos. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977, 985 (8th Cir.) (applying Missouri law and holding that "the term 'damages' used in the comprehensive general liability policies refers to legal damages and does not cover clean-up costs"), *cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Maryland Casualty Co. v. Armco, Inc.*, 822

---

1. Standard form comprehensive general liability policies were developed by insurance industry trade associations made up of nearly every major insurance company. The policies have been used since the 1940s. *See Just v. Land Reclamation Ltd.*, 155 Wis.2d 737, 456 N.W.2d 570, 573–74 (1990).

F.2d 1348 (4th Cir.1987) (applying Maryland law), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988); *Cincinnati Ins. Co. v. Milliken & Co.,* 857 F.2d 979, 981 (4th Cir.1988) (applying South Carolina law and finding CERCLA response costs clearly equitable in nature and that "general liability policies do not extend coverage for claims for equitable relief"); *see also Grisham v. Commercial Union Ins. Co.,* 951 F.2d 872 (8th Cir.1991); *Parker Solvents Co. v. Royal Ins. Cos.,* 950 F.2d 571 (8th Cir.1991) (both cases applying Arkansas law and holding coverage limited to traditional meaning of legal damages).

Wausau Chemical makes a three-fold response to these arguments. First, Wausau Chemical points out that although the cases cited above have held that response costs are not covered under standard insurance policies, the overwhelming weight of recent state and federal authority is in favor of coverage. *See, e.g., A.Y. McDonald Indus. v. Ins. Co. of N. America,* 475 N.W.2d 607 (Iowa 1991); *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990); *Hazen Paper Co. v. United States Fidelity & Guar. Co.,* 407 Mass. 689, 555 N.E.2d 576 (1990); *United States Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983); *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175 (Minn.1990); *Hays v. Mobil Oil Corp.,* 930 F.2d 96 (1st Cir.1991); *Avondale Indus. v. Travelers Indem. Co.,* 887 F.2d 1200 (2d Cir.1989) (applying New York law), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *Jones Truck Lines v. Transport Ins. Co.,* No. 88–5723, 1989 WL 49517 (E.D.Pa. May 10, 1989); *Intel Corp. v. Hartford Acc. & Indem. Co.,* 692 F.Supp. 1171 (N.D.Cal.1988) (applying California law), *aff'd in part, rev'd in part on other grounds,* 952 F.2d 1551 (9th Cir.1991). The courts in these cases have found in favor of coverage either because the term "damages" is ambiguous and should be construed against the insurer or because there is no ambiguity about the application of "damages" to CERCLA liability and response costs. According to Wausau Chemical, either reading of the insurance policies

at issue would advance both the CERCLA policy goals of encouraging negotiated arrangements and consent decrees and Wisconsin law holding that words in an insurance policy are to be construed according to "what a reasonable person in the position of the insured would have understood the words to mean." *Caporali v. Washington Nat'l Ins. Co.,* 102 Wis.2d 669, 675–76, 307 N.W.2d 218, 221 (1981) (quoting *Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414 (1975)).

Second, Wausau Chemical notes that in *Shorewood* the court declined expressly to apply its holding to the environmental context. In refusing the school districts' argument that the court should adopt the reasoning of those courts that have held CERCLA response costs to be covered damages, the court stated:

> The issue of whether clean-up costs constitute "damages" under the terms of an insurance contract has never been addressed by a Wisconsin court. Such an important issue should not be decided in a cursory fashion by this court. Therefore, we decline to adopt or apply the analogy posited by the school districts.

*Shorewood,* 488 N.W.2d at 91. According to Wausau Chemical, this statement evidences an intent by the court to leave the question of CERCLA response costs for another time and indicates that a different result might be warranted in the environmental context or in cases of property damage as opposed to civil rights violations.

Finally, Wausau Chemical argues that a case by the Wisconsin Court of Appeals that was decided after the filing of all the briefs in this case resolves this issue in favor of coverage. On November 25, 1992, the court of appeals held that CERCLA response costs "fall readily within the compass of 'legal damages.'" *City of Edgerton v. General Cas. Co.,* 172 Wis.2d 518, 493 N.W.2d 768 (1992). In so holding, the court acknowledged that it was bound by the conclusion in *Shorewood* that the term "damages" in a comprehensive general liability policy is unambiguous, but held that the holding in *Shorewood* allowed the conclusion that response costs were unambigu-

ously legal damages and covered under a standard-form comprehensive general liability policy in Wisconsin. According to the court of appeals, the Superfund initiative that the plaintiffs in that case had agreed to assume "does not look solely to the future conduct ...; it looks to conduct which has already caused injury and will continue to cause injury unless the cause of the injury is eliminated." The court adopted the approach taken by several courts finding in favor of coverage, that

> the argument concerning the historical separation of damages and equity is not convincing ... the insured ought to be able to rely on the common sense expectation that property damage within the meaning of the policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely third parties.

*City of Edgerton,* 493 N.W.2d 768 (quoting *Upjohn Co. v. Aetna Cas. and Sur. Co.,* 768 F.Supp. 1186, 1199–1200 (W.D.Mich. 1990)).

■ When a federal court applies state law and the supreme court of a state has not ruled on the issue, the federal court is bound to follow an applicable state court of appeals decision. *Kutsugeras v. Avco Corp.,* 973 F.2d 1341, 1346 (7th Cir.1992) (applying Wisconsin law and holding that when there is no evidence that the state supreme court would disapprove of court of appeals decision, federal court is bound by court of appeals decision).

Based on this decision by the state court of appeals, and in light of the Wisconsin supreme court's recent refusal to apply to the environmental context the legal—equitable distinction it made in *Shorewood,* as well as the weight and reasoning of recent authority finding in favor of coverage, *see* cases cited in Barry R. Ostrager and Thomas R. Newman, *Insurance Coverage Disputes* § 8.03(c) at 284 (4th ed. 1991) ("a majority of courts which have considered the issue have concluded that CERCLA-type response costs constitute damages within the meaning of a comprehensive general liability policy"), I find that there is no ambiguity about the meaning of "legal damages" in this context: the term applies to CERCLA response costs. The response costs incurred by Wausau Chemical pursuant to the 1990 consent decree are "damages" under the insurance policies at issue as a matter of law.

*Response Costs as "Property Damage"*

■ Continental and Hallmark make the argument that in addition to limiting the covered sums to "damages," the policies provide expressly that the damages must be for "property damage." "Property damage" is defined in the policies as "physical injury to or destruction of tangible property" and "loss of use of tangible property which has not been physically injured or destroyed." Relying on *Mraz v. Canadian Universal Ins. Co.,* 804 F.2d 1325 (4th Cir.1986) and *Cincinnati Ins. Co.,* 857 F.2d 979, Continental and Hallmark argue that response costs incurred in connection with the cleanup of the site constitute the economic consequences of operating a business rather than property damage suffered by third parties that Wausau Chemical is legally obligated to pay. Continental and Hallmark argue also that the United States and the State of Wisconsin have not sought compensation for the destruction of natural resources in which they have asserted a proprietary interest, but rather reimbursement for the cost incurred to remedy conditions that present a danger to the public health and welfare of the environment.

Wausau Chemical responds that the holding in *Wagner v. Milwaukee Mut. Ins. Co.,* 145 Wis.2d 609, 427 N.W.2d 854 (Ct.App. 1988), that gasoline in a municipal sewer line was damage to "tangible property," applies equally to the chemicals leaking into the Wausau water supply in this case. Wausau Chemical has the better argument. Just as response costs to remedy damage done to the physical environment are "damages," they are damages to "property." In *Wagner,* the court held that property damage includes cleanup costs associated with public or government-owned interests constituted property damage. *Id.,* 145 Wis.2d at 613 n. 3, 427 N.W.2d at 856 n. 3. Courts in other jurisdictions addressing the issue

have reached similar conclusions that "property damage" includes contamination to natural resources such as groundwater and soil and the cost of subsequent clean-up. *See, e.g., Chesapeake Util. Corp. v. American Home Assur. Co.*, 704 F.Supp. 551, 565–66 (D.Del.1989) (expressly rejecting *Mraz* and finding it sufficient for coverage under the policies that insured was forced to pay damages *because of* property damage); *United States v. Conserv. Chem. Co.*, 653 F.Supp. 152 (W.D.Mo.1986) (applying Missouri law and rejecting argument that measure of recovery was economic loss rather than damage to natural resources); *AIU Ins. Co.*, 799 P.2d at 1279; *Hazen Paper Co.*, 555 N.E.2d at 583; *Minnesota Mining & Mfg. Co.*, 457 N.W.2d 175; *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 784 P.2d 507, 515–16 (1990); Annotation, "Liability Insurance Coverage for Violation of Anti–Pollution Laws," 87 ALR4th 444 §§ 9–11 (and cases cited therein). The weight of authority rejects the argument that environmental loss should be characterized as economic rather than as property damage as well as the argument that the government must have a proprietary interest in the property. On the basis of this authority, I conclude that the damage to the groundwater at and around the Wausau Chemical site is "property damage" within the meaning of the standard-form comprehensive general liability policies at issue.

*"Owned–Property" Exclusion*

■ Continental and Hallmark put forward the argument that the exclusion of coverage in certain of its policies for "property owned or occupied by or rented to the insured" precludes a finding that Wausau Chemical is entitled to coverage for response costs. According to Continental and Hallmark, the plain and unambiguous meaning of the owned-property exclusion is that property owned by the insured is not covered under those liability policies and that this applies to the area in question under the 1990 consent decree.

Wausau Chemical responds that Continental and Hallmark cite no case law in support of this proposition and that, in fact, all of the case law is in favor of coverage. Wausau Chemical is correct. Courts addressing this issue have found that when chemicals released on the insured's property contaminate the groundwater below, an owned-property exclusion will not defeat coverage. *See, City of Edgerton*, 493 N.W.2d 768 ("repairs to the site itself, when made as an element of a comprehensive cleanup and remediation to plan designed to repair the environment, are not excluded from coverage by an owned-property exclusion"); *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 947 F.2d 1023 (2d Cir.1991) (proof of damage to groundwater is sufficient to find damage to property not owned by the insured), *cert. denied,* —— U.S. ——, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992); *Claussen v. Aetna Cas. and Sur. Co.*, 754 F.Supp. 1576, 1579 (S.D.Ga.1990) (under controlling law, insured does not own the groundwater under his land and owned-property exclusion does not bar coverage); *Intel Corp.*, 692 F.Supp. at 1182 (owned-property exclusion does not apply where water beneath leased property is polluted and nearby property is placed in jeopardy).

Additionally, the 1990 consent decree referred not only to property owned by Wausau Chemical, but also to the soil, subsoil, groundwater and surface water in and around the City of Wausau. Moreover, under Wisconsin law, the groundwater underneath a person's land is not owned by that person but is akin to an easement not subject to the owned-property exclusion. *See State v. Michels Pipeline Constr.*, 63 Wis.2d 278, 217 N.W.2d 339 (1974); *Patrick v. Head of the Lakes Coop. Elec. Ass'n*, 98 Wis.2d 66, 70–71, 295 N.W.2d 205, 208 (Ct.App.1980). For these reasons, the owned-property exclusion in the Continental and Hallmark policies does not bar coverage in this case.

*Late Notice and Prejudice*

■ The insurance policies at issue require that notice of an occurrence under the policy be given to the insurer "as soon as practicable," "promptly," or at the time when it appears an occurrence may involve the insurance policy. An "occurrence" is

defined as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage...."

██ Under Wisconsin law, if notice is unreasonably late under a policy, such late notice works to exclude coverage only if the insured suffered prejudice as a result of late notice. Wis.Stat. § 632.26(2). In such a case, "the risk of nonpersuasion is upon the person claiming there was no prejudice." *Id.* In *Rentmeester v. Wisconsin Lawyers Mut. Ins. Co.*, 164 Wis.2d 1, 473 N.W.2d 160 (Ct.App.1991), a malpractice insurer denied coverage based on its assertion that the insured had not provided timely notice of a claim against him. The Wisconsin Court of Appeals found that notice was indeed untimely but held that the insurer could not deny coverage because no prejudice had resulted from the untimely notice. After noting that the burden was on the insured to show the insurer was not prejudiced, the court stated,

> [t]he only prejudice CNA claims is that the untimely notice precluded it from intervening in the underlying action between the Rentmeesters and the Lanes. CNA argues that it was prejudiced by its inability to conduct discovery, participate in settlement negotiations ... and otherwise participate in the underlying action. CNA, however, does not elaborate on how it was prejudiced by its inability to participate in these proceedings.

*Id.*, 164 Wis.2d at 9, 473 N.W.2d 160.

Wausau Chemical argues that it has presented evidence of no prejudice while its insurers, like the insurer in *Rentmeester*, have failed to present any evidence of prejudice and thus its insurers may not rely on untimely notice to deny coverage. Wausau Chemical argues that in the eight years since it first gave its insurers notice of contamination, the insurers have made no effort to investigate the contamination or interview witnesses and that the insurers indicated to Wausau Chemical that they would not perform any investigation while

a coverage dispute was pending. Wausau Chemical argues further that when an insurer denies coverage, Wisconsin law allows the insured to enter into a reasonable settlement without the consent of its insurer and not lose the right to recover on the policy later. *See Jahns & Knuth Co. v. American Indem. Co.*, 182 Wis. 556, 196 N.W. 569 (1924).

The insurers respond that Wausau Chemical is attempting to place the burden of showing prejudice on the insurers, contrary to Wis.Stat. § 632.26(2), and that they have done more to show prejudice than the insurers in *Rentmeester*, making that case inapposite. Maryland Casualty argues that the alleged late notice deprived them of the opportunity to interview witnesses and make recommendations regarding the spills as well as the opportunity to participate in negotiations regarding the 1990 consent decree.

I conclude that the insurers' allegations of prejudice are unsubstantiated by any undisputed facts and that Wausau Chemical has put forward sufficient evidence to meet its burden of showing no prejudice. This case is similar to *Rentmeester* in its facts. The insurers may not deny coverage based on late notice, even assuming that the notice was unreasonably late as the insurers assert.[2] First, this is not a case in which the insurer was unaware of an occurrence or potential claim until long after the time the insurer was in a position to engage in investigation, negotiation or litigation. In August 1984, Wausau Chemical alerted its insurers to the June 1984 EPA removal action. The insurers responded by denying coverage and refusing to take any action. In January 1986, Wausau Chemical alerted its insurers that it had received a Potentially Responsible Party letter. The insurers responded by stating they could not take any action until a suit or formal claim was filed. In November 1987, Wausau Chemical notified its insurers of the 1987 United States suit that had been brought against it. In response, Maryland

---

2. Because I find that the insurers were not prejudiced, I need not reach the question whether notice was late.

Casualty filed its declaratory judgment action denying coverage and responded by letter that it would not address any contemplated action until formal suit was brought, although it did have the right to investigate under the policy. Ultimately, Wausau Chemical withdrew its claim for coverage and entered into an agreement with EPA to pay for past response costs. In December 1990, Wausau Chemical notified its insurers that the United States and State of Wisconsin had filed actions against it. The insurers responded by denying coverage on numerous grounds.

The insurers may be correct that Wausau Chemical failed to notify them of every individual occurrence and failed to notify them of each step in the negotiating process with EPA and the Wisconsin Department of Natural Resources. However, there is no evidence that the insurers would have acted any differently if notice of each instance had been given to them. Each time the insurers were notified of a new development in cleanup or litigation at the Wausau Chemical site, their response was to deny coverage and to give no indication that investigation or other action on their part would be necessary or forthcoming under any circumstances. This is not to say that the insurers were wrong to deny coverage at every opportunity. Such denial may have been in their best interest. However, by limiting their efforts to denying coverage, and giving no indication that they would ever conduct an investigation or participate in negotiations until coverage was decided, the insurers cannot be heard to say at this point that prompter notice would have caused them to act differently. On the contrary, the evidence indicates that only an outcome in favor of Wausau Chemical in the instant litigation would trigger any affirmative action on the part of the insurers. I conclude that Wausau Chemical has met its burden of showing no prejudice and that the insurers may not deny coverage based on lack of timely notice.

*"Voluntary" Payment*

■ The insurers argue that they are not obligated to provide coverage for response costs pursuant to the 1990 consent decree because the insurance policies at issue provide that "the insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense," and that by obligating itself to take remedial measures under the consent decree, Wausau Chemical runs afoul of this provision. The insurers cite *Augat, Inc. v. Liberty Mut. Ins. Co.,* 410 Mass. 117, 571 N.E.2d 357 (1991), in support of their position. In *Augat,* the insured entered into a consent order with the Commonwealth of Massachusetts for environmental cleanup without notifying its insurer and later sought reimbursement. The Supreme Judicial Court of Massachusetts held that the insured had voluntarily assumed the obligation to clean up the site and thus released the insurer from its duty to indemnify. The insurers assert that this is exactly what Wausau Chemical did: it begin negotiations, entered into the 1990 consent decree and did not notify its insurers until December 18, 1990.

Wausau Chemical counters that invitations by the EPA can hardly be termed "voluntary" because of the consequences that await potentially responsible parties who decline to participate in negotiations and force the EPA to remediate the site itself and sue later to recover costs. These consequences include punitive damages penalties of up to three times the cleanup costs, *see* 42 U.S.C. §§ 9606(b), 9607(a), and civil penalties of up to $25,000 per day, *see* 42 U.S.C. § 9604(e)(5)(B)(1992). Wausau Chemical argues that the only realistic alternative for a potentially responsible party is to engage in settlement negotiations and agree to perform remedial actions. Wausau Chemical distinguishes the cases cited by the insurers in support of their position by arguing that in those cases, the insured entered into a settlement agreement without ever giving notice to its insurers or asking them to provide coverage. In this case, Wausau Chemical had attempted for years to obtain coverage from its insurers and notified its insurers of the original Potentially Responsible Party letter. Wausau Chemical argues that this distinction placed it in the position of having no choice

but to negotiate with EPA and assume the remediation costs.

The majority of courts addressing this issue have held that costs incurred when an insured engages voluntarily in cleanup activities in advance of litigation are covered under comprehensive general liability policies. *See, e.g.,* cases cited in *Insurance Coverage Disputes* § 8.03[a] at 270; *Port of Portland v. Water Quality Ins. Syndicate,* 549 F.Supp. 233 (D.Or.1982), *aff'd in part, rev'd in part,* 796 F.2d 1188 (9th Cir.1986); *Compass Ins. Co. v. Cravens, Dargan & Co.,* 748 P.2d 724 (Wyo.1988). Although Wausau Chemical did appear to have a choice of engaging in negotiations with EPA or holding back and refusing to comply until forced, this choice was superficial at best. The legislative history of CERCLA provides evidence that the stiff penalties for failure to negotiate with EPA were intended to make the primary force behind cleanup efforts voluntary settlements, rather than drawn-out litigation. *See* H.R.Rep. No. 253, 99th Cong., 2d Sess., pt. 1 at 101 (1985), U.S.Code Cong. & Admin.News 1986, 2835, 2883 ("negotiated private party actions are essential to an effective program for cleanup of the nation's hazardous waste sites and it is the intent of this Committee to encourage private party cleanup at all sites"). To hold that such settlements are "voluntary" for purposes of an insurance policy exclusion would frustrate the intent of Congress. More important, this case is distinguishable from *Augat* because Wausau Chemical alerted its insurers to the fact it had received a Potentially Responsible Party letter. The insurers' response was that they could take no action because such a letter was not a formal suit, and that until coverage was established, no investigation or other action would be taken on the part of the insurers. The insurers knew as well as Wausau Chemical that the possibility of further action by EPA and pressure to negotiate a settlement would be forthcoming. In failing to take any affirmative steps to intervene at that point, the insurers may not attempt to exclude coverage now because the agreement was "voluntary." *See Broadhead v. Hartford Cas.*

*Ins. Co.,* 773 F.Supp. 882, 895 (S.D.Miss. 1991) ("[i]t is generally recognized that once an insurer denies coverage and liability, the insured has the right to settle with its claimant rather than proceed to trial"); *Chemical Applications Co. v. Home Indem.,* 425 F.Supp. 777, 779 (D.Mass.1977) ("an insurer who refuses to defend a suit at all may not assert that the insured's reasonable settlement was unauthorized [under a voluntary payment exclusion clause]"). Because the insurers responded to notice of the Potentially Responsible Party letter by expressing their intention to remain uninvolved and deny coverage at all costs, forcing Wausau Chemical to go it alone, they cannot now assert that a cost-saving settlement was voluntary and is excluded under the policy.

*Property Damage During the Policy Periods*

The Maryland Casualty Policies

■ Maryland Casualty provided primary insurance coverage to Wausau Chemical from February 21, 1967 until February 21, 1982 and excess insurance coverage from May 6, 1974 until March 1, 1982. The policies provide that Maryland Casualty will pay "all sums which the insured shall become legally obligated to pay as damages because of ... property damage." "Property damage" is defined as "physical injury to or destruction of property which occurs during the policy period."

Maryland Casualty contends that, based on this language, it cannot be called upon to provide coverage for any spills that occurred after March 1, 1982 and that Wausau Chemical bears the burden of demonstrating that any costs for which it requests indemnification fall within the coverage period. Maryland Casualty argues that Wausau Chemical's liability under the 1990 consent decree arises from two spills of perchloroethylene, one that occurred on February 15, 1983 and another on December 19, 1983. Maryland Casualty bases this conclusion on the fact that the 1990 consent decree called for placing soil vapor extraction systems at three source areas, two of which were in the vicinity of the

perchloroethylene spills listed above and one for which Wausau Chemical had no responsibility. According to Maryland Casualty, the property damage for which Wausau Chemical is responsible is limited to those two spills.

Wausau Chemical responds that although the 1990 consent decree provided for source vapor extraction systems in the areas where the two 1983 perchloroethylene spills occurred, it is undisputed that the decree was directed to groundwater contamination in and around the Wausau Chemical site and the groundwater was contaminated with toluene, xylene, chlorinated ethene, ethylbenzene, diclorethene and trichloroethylene in addition to perchloroethylene. Additionally, Wausau Chemical points out that chemical contamination of the environment was documented well before 1983. Based on these facts, Wausau Chemical contends that there are significant disputes of fact concerning the source of the contamination and proper allocation of liability among the insurers, so as to make summary judgment inappropriate on this issue. However, Wausau Chemical goes on to ask the court to apply the "continuous trigger" rule to determine when continuous, environmental "property damage" should be deemed to have occurred.

I conclude that disputed facts make it impossible to decide on this motion for summary judgment whether the property damage meant to be remediated with the 1990 consent decree occurred during the time Wausau Chemical was covered by the Maryland Casualty policies. It is clear that the groundwater was contaminated with many more chemicals than the perchloroethylene that spilled in 1983. How much contamination can be attributed to property damage that occurred during the duration of the Maryland Casualty policies and how much can be attributed to damage after the expiration of the policies cannot be decided on the present record. Also, because of the disputed facts surrounding this issue, it is also inappropriate to reach the issue raised by Wausau Chemical whether Wisconsin has adopted a "continuous trigger" rule for environmental property damage cases.

### The Continental and Hallmark Policies

Hallmark provided primary insurance coverage to Wausau Chemical from February 21, 1982 until August 31, 1983. Continental provided coverage from August 31, 1983 until August 31, 1986. Hallmark argues that to the extent the 1990 consent decree is based on the December 1983 spill, Hallmark need not indemnify Wausau Chemical because its policy coverage had ended.

As stated above in the discussion of the Maryland Casualty policies, there are disputed facts concerning which spills caused the property damage that is the subject of the 1990 consent decree and the proper allocation of coverage between the insurers. Therefore, I can make no decision on the duty to indemnify or the allocation between Hallmark and the other insurers at this time.

### "Known" Risks and the Principle of Fortuity

 Continental and Hallmark make the argument that an insurance policy provides coverage for only those risks contemplated by the parties and that the policies issued to Wausau Chemical were intended to provide coverage only for accidental and unexpected events. Under the "principle of fortuity," insurance covers fortuitous losses and losses are not fortuitous if the damage is caused intentionally by the insured. *See Hedtcke v. Sentry Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982). From this, Continental and Hallmark argue that they have no duty to provide coverage in this case because Wausau Chemical had knowledge of completed property damage or at least property damage that was highly likely before it purchased the insurance policies. They argue such knowledge is akin to intentional conduct excluded from coverage by the principle of fortuity.

Continental and Hallmark go on to cite *Kremers–Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156 (1984), and *Fidelity & Deposit Co. v. Verzal*, 121 Wis.2d 517, 361 N.W.2d 290 (Ct.App.1984), in support of the argu-

ment that the event or accident that gives rise to liability must occur within the policy period and that any damage that occurs before the beginning of the policy is necessarily excluded from coverage. Based on this, Continental argues that it is not responsible for coverage for any event before August 1983 and Hallmark argues it is not responsible for coverage for any event before February 1982. Wausau Chemical counters that in environmental damage cases, the fact of "damage" is not a discrete event and thus the damage at issue here was not a known and completed event at the time Wausau Chemical purchased the insurance policies.

Resolution of this issue hinges on when the "damage" occurred and what policies were in effect during numerous spills that led to the damage. Again, disputed facts concerning which spills led to the property damage covered by the 1990 consent decree and the proper allocation of liability among the parties preclude a determination of this issue. It cannot be decided whether Wausau Chemical ran afoul of the principle of fortuity by attempting to obtain insurance for past "damages" or "occurrences," until it can be determined exactly which spills and other events led to the property damage covered by the 1990 consent decree. Summary judgment will be denied on this issue.

*The November 1988 Release*

■ Continental and Hallmark argue that the terms of the 1988 release in their favor regarding the Wisconsin circuit court and the federal district court actions brought by Wausau Chemical against them foreclose any coverage by them for remediation costs pursuant to the 1990 consent decree relating to the December 1983 spill. According to these parties the release applied to damages for cleanup of the December 1983 spill, damages for future operation and maintenance of the current groundwater extraction system used to clean up the December 1983 spill.

Wausau Chemical argues that the 1988 release is not as broad as Continental and Hallmark assert and is limited to certain damages for removal, including expenses incurred and operation of the groundwater extraction system up to and through January 3, 1985.

Both parties are correct to the extent that the release is partial and excludes from coverage certain removal costs related to the December 1983 spill. However, disputed facts exist concerning the extent to which the December 1983 spill has caused or may cause environmental damage in the future and whether Continental and Hallmark will be responsible for any indemnification concerning these costs. For this reason, summary judgment is inappropriate on the scope of the 1988 release.

*Estoppel*

■ Maryland Casualty argues that Wausau Chemical is estopped from asserting coverage for any part of the consent decree that stems from claims made by the United States in its May 16, 1989 Notice Letter. According to Maryland Casualty, its declaratory judgment action in this court was dismissed as moot on June 12, 1989, based on the fact that no government suits were pending against Wausau Chemical and a live controversy for coverage did not exist. Maryland Casualty asserts that because Wausau Chemical remained silent concerning the May 16 Notice Letter, the declaratory judgment action was wrongly dismissed and Wausau Chemical should be estopped from asserting a claim at this time.

Wausau Chemical counters that the May 16 Notice Letter was relevant only to liability for *future* costs of remedial action and the declaratory judgment suit and Wausau Chemical's motion to dismiss concerned only *past* costs of remedial action for which it had withdrawn its request for coverage. Also, Wausau Chemical argues that the elements of estoppel have not been met in this case.

A party is estopped from asserting a suit or claim if he or she acts in such a way as to induce another to act in detrimental reliance. *Heideman v. American Family Ins. Group,* 163 Wis.2d 847, 473 N.W.2d 14 (Ct.App.1991). Proof of estoppel must be clear, satisfactory and convincing and may not rest on mere inference or conjecture.

*Gonzalez v. Teskey,* 160 Wis.2d 1, 465 N.W.2d 525 (Ct.App.1990). Maryland Casualty fails to make out an estoppel argument. In the letter to Maryland Casualty and the court on May 26, 1989, Wausau Chemical stated explicitly that it was withdrawing only its claims for past cleanup costs and that it reserved the right to assert coverage for any future claims.

This distinction between future costs and past costs was mirrored in this court's order granting the motion to dismiss "without prejudice to any third-party claims and cross-claims asserted against defendants and tendered by them to plaintiff for defense, and without prejudice also as to those claims that are not ripe for adjudication." Maryland Casualty points to no facts showing that it was unaware of the fact that a future claim for coverage might be asserted against it. On the contrary, correspondence concerning the declaratory judgment action provides evidence that all parties involved had notice that Wausau Chemical was withdrawing only its claim for coverage for past costs. Maryland Casualty has not shown that it acted to its detriment based on a reasonable assumption that no future claims for coverage would be asserted against it concerning the Wausau Chemical site. Therefore, the principle of estoppel is not applicable and summary judgment will be denied on this issue.

### ORDER

IT IS ORDERED that

(1) the motion for summary judgment of Wausau Chemical and James Cherwinka is GRANTED and the motion for summary judgment of Maryland Casualty, Northern Insurance, Continental Insurance and Hallmark Insurance is DENIED on the following issues: (a) environmental responses costs are "damages" and (b) environmental response costs are "property damages";

(2) the motion for summary judgment of Wausau Chemical and James Cherwinka is DENIED with respect to the definition of "occurrence" within the policy period and GRANTED on the meaning of "property damages";

(3) the motion for summary judgment of Maryland Casualty, Northern Insurance, Hallmark Insurance and Continental Insurance is DENIED on the following issues: (a) that Wausau Chemical's failure to give timely notice to its insurers of occurrences and claims bars coverage; (b) that voluntary payment exclusions in the policies bar coverage; and (c) that relevant property damage did not occur during the policy periods;

(4) the motion for summary judgment of Maryland Casualty is DENIED on the issue of estoppel; and

(5) the motion for summary judgment of Hallmark Insurance and Continental Insurance is DENIED with respect to the "owned-property" exclusion, the meaning of "property damage," the scope of the November 1988 release, and the application of the principle of fortuity and exclusion for known risks.